*CARR, J.
It was contended for the appellants, that the instrument of writing left by Mr. Boisseau, contains a complete disposition of his whole estate, real and personal, which is said to be large; and on the other side, that it bequeaths two legacies of 500 dollars each, contingently, leaving the testator intestate as to all the rest of his estate.
When I heard the argument (and it was very ably argued on both sides) I was strongly impressed with the opinion, that this was a full disposition of the whole estate; and the impression remained for some time; but it grew weaker, as I looked more closely into the subject, and especially into the will itself, till at length I became convinced, that this must be pronounced an intestacy as to all but the two legacies. When I say convinced, I do not mean that I have no doubt, but that this is the decided inclination of my mind.
The books have laid down many rules to assist us in the construction of wills. The great point to be ascertained, is the intent of the testator. Where this is clear, and violates no rule of law, it must govern with absolute sway; every thing yields to it. Property real or personal, even to the disinherison of the heir, may be given by implication, if such implication be necessary to effect the clear intent of the testator. In Wilkinson v. Adam, 1 Ves. & Beam. 465, lord Eldon says, “With regard to that expression necessary implication, I will repeat what I have before stated, from a note of lord Hardwicke’s judgment in Coriton v. Hellier; that in construing a will, conjecture must not be taken for implication ; but necessary implication means, not natural necessity, but so strong a probability of intention, that an intention contrary to that which is imputed to the testator cannot be supposed.” Again, lord Mansfield (as cited by lord Lougborough, in Lytton v. Lytton, 4 Bro. C. C. 460), says, “A great dispute has been made, of what is a necessary implication” — “It is that implication which arises upon the words the testator has made use of, that clearly satisfies the court what was his meaning — and that, as putin opposition to conjecture.” Let us look now at the writing 'xin question. No words could have expressed, more clearly and strongly, the intention of *96 the writer, to exclude his brothers in law, and their wives too, unless they survived them, from all participation in his estate. But it was admitted, that mere words of exclusion would not operate, as a man can only exclude his heirs and next of kin, by an actual devise or bequest to others.
It was strongly contended, however, that this will, by clear and necessary implication, gave the whole estate to the heirs and next of kin (as designated by the statutes) excepting the two excluded sisters and their descendants, from all but their contingent legacies. Many authorities were cited and discussed; but the view I take of the case renders it unnecessary to examine them. My opinion is formed, on the paper itself. After the most careful consideration, it seems to me, that so far from furnishing a necessary implication of the writer’s intent to dispose of his whole estate, it shews strongly, that he did not mean by this writing to dispose of one cent beyond the two legacies of 500 dollars. Intention being the life and soul of a will, it can hardly be imagined, I presume, that a man can make a will without intending to do so, or give by it more than he means to give; especially, a man who has been long in business, has made a large estate; and knows well how to express his meaning. Such men are most particular; knowing the full value of their property, they bestow it with care and caution, and parcel it out with particularity among the objects of their bounty. Can we suppose, that such a man sitting down with the deliberate intention of giving away his whole estate, lands, slaves and other personalty, would have expressed such intention in the way this paper does? Is it the natural, the probable manner, in which a plain man of business would divide and dispose of his property? Merely to exclude two sisters from all, but a small legacy, without saying one word about the rest of his large estate, though he meant to dispose of the whole, and that by this very paper? Taking even this general view of the subject, I cannot believe, that any man would act thus.
*But this opinion is greatly strengthened, by a more particular analysis of this paper. He begins thus, “not having made any will so as to dispose of my property” — what then? we should naturally conclude, that if he meant this writing to be such will, he would go on to declare it. But no; he proceeds, “and two of my sisters marrying contrary to mjr wish, should I not make one” (could a man, in his senses, put these words into the very will he was then writing?) 1 ‘should I not make one, I wish this instrument,” —to do what? “to prevent their husbands from having a cent of my-estate, and my sisters also, unless they outlive their husbands — in that case I leave them 500 dollars each.” Do not these words clearly shew, that the sole purpose of this paper was to exclude the offending parties, except as to the 500 dollars each? that he never had the idea, that by this writing he was disposing of his estate? If he had meant this as his will, would he not have called it so, and not have spoken of a future intention, a suspended intention, of making a will? Would he not have appointed executors?But farther, look at the indorsement written by himself‘on this paper — “Memorandum, to prevent Bennett Aldridge and Burwell Aldridge from having any of my estate, that each might claim in right of their wives, without a will made by me.” This shews to me, his knowledge, that if he died simply intestate, these men might claim part of his estate; which claim he thought he could prevent, and meant to prevent by this instrument, in case he should not write a will; repeating the idea he had expessed in the body of the paper, — ‘ ‘not having made a will, should I not make one, I wish this instrument to prevent” &c. The two contingent gifts of 500 dollars entitled this writing to probate as a testamentary paper; just as an indorsement upon, a note, “I give this note to A.” may be proved as testamentary. Chaworth v. Beech, 4 Ves. 555, 565. But not a step further can I agree to extend it; for I am well satisfied, that the writer never dreamed of this as a will disposing of his estate generally.
*It would seem hardly necessary to-cite cases in support of this view of the subject; but I will refer to one, Matthews v. Warner, 4 Ves. 186, 5 Ves. 23. There, a paper was written, which began thus, “2nd Nov. 1785. A plan of a will proposed to be drawn out, as the last will and testament of William Matthews &c.” The writer then went on by words of “present disposition,” to give away his whole estate, making residuary legatees, appointing executors, signing and dating the paper, the whole being in his own handwriting — upon it was this indorsement, “2d Oct. 1785. A plan designed for the last will and testament of Wm. Matthews, storekeeper &c.” The judge of the prerogative-court decided this to be a valid will. Upon appeal to the court of delegates, the decision was affirmed. The case was then heard by the lord chancellor, upon a petition for a commission of review; and he thinking it not a valid paper, a commission of review issued; under which (as we see 5 Ves. 23), the sentence of the court of delegates and prerogative judge, was reversed, and the deceased declared intestate. Upon the hearing before the chancellor (lord Lough-borough) he makes some strong remarks, which seem to me very appropriate to the-case before us. After dwelling with emphasis on the commencement and indorsement, calling it the plan of a will proposed to be drawn &c. and admitting that it contains legatory words of present gift &c. he adds — “I should have no difficulty, sitting as I have sat in a court of law, to put it so-to the jury, that I should expect a verdict, that he had not devised, that it was no will, but only a project of a will, — not a complete, definite rule of law for settling his fortune. It is' not, it cannot be, denied, the argument presses so strong, that upon the perusal of this paper, the natural conclusion is, that it was his intention to make a more formal paper than this. That inference cannot possibly be avoided. Then, ex hypothesi, this paper, at the time he subscribed it, wasnot the law, the testament.” And so I say of the paper before us, that it *97 was never the law, the testament, by which Boisseau meant to dispose of his ^'estate, further than as to the two legacies of 500 dollars. I am for affirming the decree.
CABELL, J.
I concur in affirming the decree.
BROOKE, J.
It is somewhat remarkable, that this case has no exact example in any of the english cases which have been cited, or to which I have been able to refer. It must be decided, therefore, on principle and not on authority.
I think it is a principle not to be controverted, that a testator cannot disinherit his heir, unless he devises his estate to somebody else. This principle is fully recognized by lord Mansfield in the case of Denn v. Gaskin. To give to a testator the power to disinherit his heirs, whom the law has appointed to take the estate, unless he devises it to some other person, would be, in effect, to give him authority to repeal the statutes of descents and distributions. That a testator may disinherit his heirs, by giving his estate to somebody else, cannot be doubted ; but if, in every case in which he intends to exclude his heirs from the inheritance, it is to be implied from that alone, that he devises his estate to those who (some of his heirs being excluded) would take the inheritance, the principle, that to disinherit his heirs he must devise his estate to somebody else, would be of no consequence; because every exclusion of his heirs would be a devise to somebody else.
This principle, that a testator cannot disinherit his heirs, unless he devises his estate to somebody else, results from the nature of property. It is the creature of the law, and the law will dispose of it, unless, under the permission which the law gives the owner to make a will, he disposes of it. And, in examining cases of this kind, we are not to forget, that those who claim under the law, have as strong a claim to the property, as those who claim under the will; indeed, somewhat stronger, since it is a settled principle, 'that if a devise gives no other estate than the law gives, those who are to take, take under the law and not under the will, their title under the law being preferable to their title under the will.
*With these remarks, I shall proceed to examine the will before us. The first remark I shall make on this “instrument,” as the testator calls it, is, that it wants at least one of the features of a will; the testator makes no executor; which is some evidence, corroborated by the terms of the instrument, that he did not intend it as a will of his whole estate, but to have no other operation than to exclude his two sisters, and their husbands, from any other portion of his estate, but the two legacies given to the two sisters in the event they survived their husbands, and in the event of his not disposing of his estate by another will. His whole mind appears by the instrument, to have been occupied with the intent, first, to exclude the husbands of his two sisters from getting any portion of his estate, and secondly, to exclude his two sisters themselves, except the two contingent legacies bequeathed to them. The memorandum upon the instrument explains his main intent ro be, to exclude the two husbands from getting any portion of his estate. Taking the meaning of both (the instrument, as he calls it, and the memorandum) from their words, language could not be more full to convey this intent, and no other. To infer that the testator meant more, I think is impossible. That he meant to give the rest of his estate to those who> would take it, according to law, the two sisters being excluded, — would be an inference that would violate every fair construction of the instrument and memorandum, and would establish a principle in direct opposition to the acknowledged principle, that a testator cannot disinherit his heirs, unless he gives his estate to some one else. The inference that he does give it to somebody else, from the mere exclusion of some of his heirs, without a single testamentary expression to justify it, would give to a testator the power to repeal the law of descents and distributions: for, as he has not designated those who are to take under the will, and they are to take by inference only, they would take according to the law, but not under the law.
No judge was more accurate in language than lord Mansfield. In Denn v. Gaskin, he said, that though the intention *is ever so apparent, the heir at law must inherit of course, unless the estate is given to somebody else. What intention was meant? The intention to disinherit the heir. Now, the inference from that intention, if sufficient to give the estate to somebody else, would have rendered the words “unless the estate is given to somebody else,” entirely superfluous.
To carry the doctrine of implication so far, would make a will for the testator, and not interpret the will made by him. When a testator has devised his estate by will, and is not precise as to the persons who are to take, or as to the quantity of estate they are to take, — from necessity, and to effectuate his intention to dispose of his estate, and not to leave it to the law to dispose of it, courts imply his intent as to persons and the quantity of estate they are to take. But when the question is, whether he intended to devise his estate or not, we are not authorized to imply that he does, unless it is a necessary inference from the language he uses. In Denn v. Gaskin, the testator began his will thus, — “As to all such worldly estate as God has indued me with” &c. and the question was, whether by inference from those words, the devisees in the will took a fee or life estates? Lord Mansfield said, “he does not say in the introduction, that he means to dispose of all of his estate; but that with respect to it, he devises so and so.' If he did mean it; the misfortune is, that quod voluit non dixit.” He would not infer from the words “as to all such worldly estate as God has indued me with,” that the testator meant to dispose of all of his estate ; because if he did mean it, he had not said it: he would not by inference dispose of the testator’s estate for him; because it was not a necessary inference from the words used, that he meant to dispose of his whole estate.
*98 The case on which most stress was laid in the argument, by the counsel for the appellant, is Vachel v. Breton, decided in the house of lords. Upon consideration of that case (which is doubtfully reported) I think it will be found not to have turned on the question now before us. The reporter of it refers to Mason v. Hawkins and Matthew v. Fitzsimon, *4 Bro. P. C. 7, 11, for the principle on which it : was decided. In Vachel v. Breton, the testator had disposed of his whole estate; there was no intestacy, nor any question on that point: he bequeathed to two of his wife’s children (whom he did not own as his) ten shillings, each, and no more, and to his other children specific legacies in place &c.; he appointed his executors, and gave them legacies, but did not add, for their care and pains, or any thing to that purpose: and the question was, whether the executors were to take the surplus, notwithstanding they took legacies, or whether it was to be distributed among all the children,including the two to whom ten shillings and no more was bequeathed by the will? The court deciding that the executors took the surplus as fiduciaries, and not'in their own right, the question then was, how it was to be distributed? whether among all the children, as had been decreed by the court of chancery, or in exclusion of the two children to whom ten shillings only had been bequeathed? and the house of lords decided against the two latter children, but not on the principle, that the testator had excluded them by giving his estate to somebody else, inferrible from the terms of the will alone excluding them from the inheritance. No such inference was necessary. The testator had devised the whole of the estate, and but for the devise of the legacies to his executors, they would have taken the surplus; and that was to be distributed according to the intention of his will, to be collected from every part of it. The doctrine of implication as to whom he intended to give his property to, was entirely applicable. The testator had availed himself of the permission of the law to dispose of his property; he had taken it out of the hands of the law; and the court was to decide to whom he had given it. His will was not like th,e one before us, in which the testator has designated neither the persons who are take, nor the quantum of estate to be taken, all of which is to be inferred (if at all) from the single circumstance, that he meant to exclude his two sisters and their • : : i i ¡ ; . : 1 i ■ : i husbands.
"The case of Pickering v. Stamford, was commented on in the argument. In that case, after a devise in satisfaction of the widow’s dower, in the strongest language of exclusion of his wife from taking any other part of his estate, the testator devised a large portion of his estate to a charity; but a portion of it, consisting of real securities, did not pass, being prohibited by the statutes of mortmain, and, of consequence, he died intestate as to that portion. The trustees appointed could not take. The widow was held not to be barred of her share. Claiming under the law, she was entitled to recover her share in that portion of his property, which the testator had not disposed of, and as to which he died intestate. Strongly .expressed as the intention of the testator was to exclude her, the court did not infer from that circumstance, a devise to somebody else, and thereby exclude her.
The difference between the cases of Pickering v. Stamford and Vachel v. Breton, consists in this; that in the former, there was an intestacy as to a portion of the property, and the widow could not be ex-eluded from her claim under the law, the property not being given to any one else; but in Vachel v. Breton, the property was given to somebody else; the executors took it; there was no intestacy as to any por.tion of it; but legacies being given to the executors, they took the propertj’', not in their own right, but as fiduciaries for the next of kin; and on that ground, the court excluded two of the children, according to the expressed intention of the testator.
I think the decree must be affirmed.
TUCKER, P.
The will which is the subject of litigation in this case, presents, in my opinion, a question of very great difficulty ; and though I have, after an anxious investigation of it, arrived at the conclusion which the authorities, and the reason of the case, seem to demand, I confess I am not entirely without a doubt of its correctness.
To enable us to arrive at the real point upon which the case at last must turn, it may be as well to get rid at once, of a good many matters which otherwise might embarrass the *discussion of the real question. I shall, : : : therefore, at the threshold, remark, that the character of this instrument as a testamentary paper must be taken, if not as a concessum, at least as a matter adjudicated, and which in this case cannot be contested. It is a will, and has been admitted as such by the court of probat, and is valid both as a will of real and personal estate, if any such be disposed of by it. If, indeed, there be no such disposition, then there can be no doubt that it is ineffectual. For the statute gives the power to devise, and not merely to disinherit; and nothing can be more just than the position taken by Mr. Macfarland, in his verjT lucid and able argument, that the heir cannot be disinherited by a will which does not dispose of the estate to another. So too, it is very well settled, by the uniform and concurrent opinion of the learned, that the heir at law shall not be disinherited, except by express words or by necessary implication. And this, I conceive, not from any peculiar partiality to the heir growing out of the doctrines of primogeniture, but for other and higher reasons. The law having, upon the principles of natural affection and duty, — modified, indeed, by the policy which gives a preference to the eldest son over his brethren, — prescribed the course of transmission of the estate of a decedent, will not imply, that he has suppressed the dictates of natural feeling, or disregarded the rule established by the law, unless the intention to do so is clearly to be demonstrated. Indeed, the law having provided for the descent to the heir, his title is cer *99 tain and unquestionable, unless it be taken away by the testator. Shall that certain and unquestionable title, then, be defeated by doubtful implication? Shall a right having its foundations in nature, and its sanctions in municipal regulations, be overthrown, unless by express provision or necessary implication? Assuredly not; and it is for this reason, which applies not less to the descent of estates in coparcenary than to the law of primogeniture, that the courts have always held, that the heir shall not be disinherited by mere words of exclusion, which do not imply a devise to another. I concur, therefore, in the opinion of chief justice Tilghman, in French v. M’Ilhenny, *2 Binñey 20, that the rule of the'english law, in this respect, is not less applicable to our institutions, than to those of Great Britain. Our law may be said, indeed, to be a transcript of the human affections, and I cannot think, that, upon slight presumptions or implications, a testator shall be made to violate them.
I proceed, next, to observe, that as no man can institute a law of descent for his own property, in conflict with the general law, so if in this case the relations not excluded, are entitled to the whole estate, they must take it as devisees, and not as heirs. This is, indeed, sufficiently obvious as to that portion of the property, which, but for their disherison, would have fallen to the lot of the two sisters mentioned in the will. But it is not less true as to the residue; for it cannot be, that those who take should hold undivided portions by descent, and other undivided portions by devise; nor, indeed, would they hold any portion in the same manner as they would have held it in the case of an intestacy.
The real question in the case, then, is, whether there is devise in this will, to the heirs of the decedent other than the excluded sisters?
There is certainly no express devise. But it is well settled, that an estate may pass by will without express words, where the intention to devise is necessarily to be implied. And this is but a fair and proper construction of the statute of wills. For that statute authorizes the devise of estates, without prescribing any form in which the power shall be exercised. And as there is no set form of words for devises, so it has come to be a canon of the law, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the law. Hence, the first inquiry, in the construction of a will, always is, what is the intention of a testator? and the second is, whether that intention is consistent with the law? If it be, then it is the province of the court to effectuate it, and so to mould its provisions, as to render them consonant with law, and agreeable to the design of the testator.
*A court, however, can make a will for no man. And if the testator has so expressed himself as to shew, that whatever he may have designed, he has not carried that design into execution, the defect cannot be supplied. Voluit non dixit is the judgment to be pronounced upon the case. Yet this principle is in nowise incompatible with the construction already adverted to, which creates a devise by necessary implication. It only inhibits the implication of a devise, where there is no necessity for it. Thus, if a man devises lands to his heir after his wife’s death, the wife by implication shall have it for life, although it is not expressly given to her. Vaughan 262, 263. For, as the heir is not to have it till the wife’s death, and as nobody else could, the implication is inevitable, that the testator must have intended the wife to have it, though he has not expressly said so. But, if the testator devises lands to a stranger after his wife’s death, this is no devise to the wife ; for as the heir may hold it during her life, there is no necessary implication that he intended the wife to hold it; however strong the probability, that as he postponed the devise to the stranger, till his wife’s death, he therefore looked to her enjoyment of the estate in the mean time. 6 Cruise 206; Vaugh. 259 ; 2 Lev. 207.
Let us now proceed to look into this case. The testator, obviously with a knowledge, that in the event of his intestacy, his sisters who are named in the will, would come into the inheritance with his other heirs, unless he should provide otherwise, executed this testamentary paper, declaring its intent to be, to prevent the husbands of his sisters Martha and Dorothy from receiving one cent of his estate, or his sisters themselves, unless they should survive their husbands, and then only 500 dollars each. And the question is, whether these words are to be construed as giving, by implication, the whole estate to the other heirs? for it cannot be denied, that if they fall short of that, — if they are to be construed only as words of exclusion,— they do not operate to break the descent, but the estate will descend and pass to all the heirs, as if this instrument never had been made.
*Apply now the rules already mentioned. What was the intention of the testator? About this, I think, there can be no doubt. That he designed to exclude the sisters, is expressed. That he knew that by law his estate would, in case of his death, have gone, but for this paper, to them and others, is not merely to be fairly presumed, but is inevitably implied from the very act of preparing such a paper. If, then, he excluded them, but did not exclude the others, who by law would take if not excluded, it is clear he did not design to exclude these last, but did design that they should take the whole.
Here, then, is the intention of the testator, plainly and necessarily implied. That intention having nothing in it inconsistent with the rules of law must be effectuated. And how? By construing the will to be a devise to all the heirs of the testator, except the two sisters who are expressly excluded.
This, however, is contested, as in conflict with the principles recognized from generation to generation by the sages of the law, that though the intention to disinherit the heir be ever so apparent, the heir at law must inherit unless the estate is given to somebody else. And it is ingeniously *100 remarked, that the principle thus established, would be wholly defeated, if, upon mere words of exclusion, we>were to build up a devise by implication. It behooves us, therefore, to examine this doctrine and the cases cited, more narrowly, in order to see how far they go.
That the exclusion of the heir even by implication, and without express words, may raise an estate by implication in another, is proved by the familiar case before cited of a devise to the heir after the death of the testator’s wife. Here, although the exclusion itself is but implied, yet there is an estate implied in the wife, from that implied exclusion. Much more, then, it would seem, may an estate be implied from an express exclusion. So ton, where a man has two daughters, his coheirs, and devises to one of them after the death of his wife; this is not only an implied exclusion of that daughter, but it is an implied exclusion of her sister *also, they making together but one heir; and from this double implication of exclusion, an implication is raised of a life estate in the wife. It cannot, then, be affirmed to be a universal rule, that from words of exclusion merely, a devise by implication cannot be raised.
The cases which have -been cited, when properly understood, do not necessarily sustain the proposition. In all of them, it will be found, than an estate was not implied, because, in fact, there was no necessary implication to. be made from the provisions of the wills. Thus, in Denn v. Gaskin, the devise was to A. B. and C. equally, without words of inheritance super-added. The testator gave his heir one shilling; which we will take to have been equivalent to an express exclusion. The question was, whether the estates of A. B. and C. were to be construed to be fees, either by reason of the introductory clause, or by reason of this exclusion? It was decided in the negative. And it was asked, in the case before us, if the exclusion of the heir there, could not even enlarge by implication the life estates expressly given to A. B. and C. can it be construed to give and create an estate out and out, here? The answer, I think, is easy.
In the case of Denn v. Gaskin, admitting the exclusion of the heir, there was nothing from which the court could certainly infer what the testator designed as to the inheritance in the lands. He had given to A. B. and C. an estate, in effect, only for life, since there were no super-added words of inheritance. ' It was as much a life estate as if he had expressly declared it to be for life and no longer. Now, although by the express exclusion of his heir, we should infer that he did not intend him to take the inheritance, yet by giving an estate only for life to A. B. and C. it was equally clear, that he did not design that they should take it. To have given them the inheritance by implication, therefore, would have been to have made a will for the testator, and that too against the plainly expressed design that they should only have a life estate. The fair inference, as he had disinherited his heir, and limited an estate only for life to his nephews, was, that if he had gone on to dispose *of the inheritance, he would most probably have limited it to the sons or descendants, either of the disinherited heir, or of the nephews who-had but life interests given to them. This, at least, may have been his intention; and therefore the implication of his intention to enlarge the estate of the nephews into a fee, being only a possible and not a necessary one, could not be made consistently with legal principles. And as the implication could not be made, the fee was undevised and descended to the heir, of course, in spite of the clause by which his disherison was intended. Again, in Denn v. Gaskin, the estate having been limited to both nephews, the setting aside the heir did not necessarily imply that they should be the heir; for if he had been dead, both of them could not be heir. It could not be fairly implied, that he designed to substitute them both for his heir, since, if the heir at law-were out of the way, the eldest of the two-alone would have been heir. Had the testator, indeed, disinherited the heir, and then devised to the next in succession, without words of inheritance, there would have been more reason for implying those words; since, in that case, the act of disherison of the person on whom the estate would devolve by law, seems to have the mere design of putting that person out of the way, that he may not impede the descent to the next in succession. Such is the case here. The testator, knowing that by law his estate would devolve on four, strikes one of the four out of the succession, that the other three may take the whole. That he must have understood it as having that effect, can scarcely be denied; and that he did it with that end, I have not a doubt.
The explanation I have given to Denn v. Gaskin, furnishes, I think, the solution of the cases of Right v. Sidebotham, Doug. 759, and Right v. Russell there cited. I shall, therefore, add nothing more as to them.
. The case of Jackson v. Shauber, 7 Cowan 187, was an ejectment, and the question merely as to the legal title. The case may have been properly decided upon the ground, that whether the heir took the legal title or not, could not affect the disposition of the beneficial interest made by the testator. ^Admitting the legal title to have been in the heir, he was still a trustee for the benefit of those for whom the estate was to be sold. There was, therefore, no necessity for construing the legal title to be in the executors, contrary to the express fact, that the limitation gave them only a naked authority.
No case, indeed, has been cited on the part of the appellees, which, as I conceive, is in point to that under consideration, though the expressions used by the judges are broad enough to justify very strong inferences in behalf of the heir. On the other hand, there are many cases in which implied estates have been raised, or limited estates enlarged by implication, with or without an exclusion of the heir at law or distributee. Such are the cases already cited, of the devise to the heir after the death of the *101 wife, and the devise to one of two daughters, co-heiresses, after the death of their mother. The case, however, which seems nearest in point, is that of Vachel v. Breton. In that case the testator, having first given some specific and pecuniary legacies to his executors and others, directed, that his executors, out of his personal estate, should pay to two of the children of his wife (as he denominated them) ten shillings each, and the same sum to any afterborn child of his wife, but he made no provision as to the residue. The executors were deemed to be excluded from the residuum by the legacies given them. The question was, what was to be done with the residuum? Should it be distributed among all the children, upon the idea of an intestacy, as to that part of his estate? or was the will to be construed as impliedly giving to •the distributees who were not excluded, what was plainly denied to the children who were excluded by legacies of ten shillings and no more. The court of chancery decided, that the excluded children should •come into distribution. The house of lords decided, that the whole estate should be divided among those who were not excluded.
This case is so strongly analogous to that before us, that it has very naturally been assailed by the counsel for the appellees, and several cases have been cited, in which it seems to have been questioned. In Pickering v. Stamford, *the master of the rolls, in delivering his opinion, gives as I conceive the true exposition of Vachel v. Breton, in saying, “there it might fairly be held that the •exclusion was for the purpose of giving a benefit to the others.” The lord chancellor, however, afterwards, in the same case, did impugn the authority of this case, declared his disapproval of the reversal of the decree at the rolls by parliament, and says the case does not seem, to be a case to be followed. Now it seems strange, that the inferiour tribunal should thus, by its Ipse dixit, overthrow the judgment of the superiour; and it is still more strange, as there was, and is, no conflict between Pickering v. Stamford and Vachel v. Breton. The former is a case of resulting trust, where one of the trusts declared proved void: the rule, in such cases, is uniform that the part resulting must go to the heir •or distributees generally (according to the nature of the estate, whether real or personal). But Vachel v. Breton, was not strictly speaking the case of a trust. It was a case upon the construction of a will. The real question was, whether in defect of an express disposition of the residuum, from which the executor was excluded by a legacy, an implied bequest of it to the children who were not disinherited, should or should not be raised? It was decided that it should. It could not have been decided otherwise. Out of the whole personalty (except some specific and pecuniary legacies previously given to the executors and others) only thirty shillings was disposed of, viz. ten shillings each to two living children, and a like sum to the child with which the wife might be enseint. It was admitted, that this bequest to them of ten shillings and no more, was designed to exclude them. What was the purpose of that exclusion? As the master of the rolls says, “it might fairly be held that the exclusion of them, was for the purpose of giving a benefit to the others.” His will was, that they should be excluded. Was there any thing unlawful in that will? If not, it should have been effectuated. How? By declaring an intestacy as to the great bulk of the personalty, and letting in those who were expressly excluded? Or, by raising a bequest *'to the others by necessary implication? The latter, assuredly. It is a case for implication, I conceive, according to all the authorities; “since an intention contrary to that imputed to the testator by the creation of such an implied devise, cannot be supposed'. ’ ’
Upon the whole, I am of opinion, that we must construe this will as a devise by implication of the real estate to the heirs at law of the testator, and of the personalty to his distributees, with the exception, as to both, of the sisters who are excluded by this testamentary paper. They will take as devisees and not by descent, though in ascertaining the persons to take under the will, reference must be had to the statutes of descents and distributions. They will take also as tenants in common, and not as jointenants; 1 Scho. & Lef. 84. Nor is there any thing anomalous in this; for wherever a devise is to the heir or next of kin, who take as purchasers, or wherever a strict settlement1 is to be made under articles by which the heir and next of kin are to take as purchasers, the law of inheritance, and the statute of distributions, are referred to, to ascertain the persons who are to take. Tabb v. Archer, 3 Hen. & Munf. 399.
It is not probable, that a case of this description will often occur. But, if it be decided, that the will does not operate to pass the estate to the heirs who stand in the same degree with those disinherited, it may operate unjustly, and to the overthrow of wills which ought to be sustained. Thus, if a man having three brothers, says, “Having already made an ample provision heretofore for my brother Thomas, I hereby declare that he shall take no portion of my estate,” without saying more; this express declaration would be defeated, and he would come into the inheritance with his other two brothers, and thus have a double portion, against the express will of the testator. I cannot think this can be law.
I am of opinion, that the decree should be reversed; but my brethren having taken a different view of the subject, it must be affirmed.
Decree affirmed.