WYATT v. HENRY.

Opinion delivered December 20, 1915.

1.  WILLS—INTENTION OF TESTATOR—TESTIMONY OF SCRIVENOR.—Testimony of the scrivenor as to what he supposed was the effect of the language which he employed in the execution of the directions of the testator in the execution of a will, can not be considered by the court in construing the will.

2.  DESCENT AND DISTRIBUTION—WILL OF LIFE ESTATE TO SOLE HEIR.—Where the testator devised certain land to his son for life, with no designation of any remainderman, where the son was the testator's only child, and the testator left no widow, the son will take the fee under the statute of descent and distribution.

3.  WILLS—INCOMPLETE DEVISE—DESCENT AND DISTRIBUTION.—If a will fails to make an effectual and complete disposition of the whole of the testator's real and personal estate, the undisposed interest, whether legal or equitable, devolves to the person or persons on whom the law, in the absence of disposition, casts that species of property.

Appeal from Craighead Chancery Court; *Chas D. Frierson,* Chancellor; affirmed.

*Hawthorne & Hawthorne,* for appellant.

The will vested only a life estate.  51 Ark. 61; 52 *Id.* 113; 3 *Id.* 147.

*Huddleston, Fuhr & Futrell,* for appellee.

Under the will appellee took a fee-simple estate; that was the intention of the testator and all wills should be construed so as to effect and carry out the intention of the testator.  22 Ark. 567; 73 Am. Dec. 119; 61 Ark. 366; 112 Ark. 527; Page on Wills, p. 534, § 459.

SMITH, J.  Appellee conveyed to appellants a certain tract of land situated in Craighead County, Arkansas, by warranty deed, for the consideration there recited, a portion of which was paid in cash and the balance was evidenced by notes.  It was alleged in the complaint filed in this case that appellee was insolvent and that he was about to sell and dispose of the unpaid notes, and there was a prayer that he be enjoined from doing so.  It was also alleged that appellee claimed title to the land con-

veyed under the will of his father, and that while he had undertaken to convey the fee to said lands, he took only a life estate under the will, and it was alleged, therefore, that there had been a breach of the covenant of seisin.

The will sought to be construed in this case reads as follows (omitting certain immaterial paragraphs):

"Know all men by these presents:

"That I. F. C. Henry, of the County of Greene, and State of Arkansas, being of sound mind and memory, and wishing to settle my worldly affairs before I die, and while I am able to do so.

"I do hereby publish this my last will and testament, hereby revoking all wills and testaments by me here made.

* * *

"Second. I will twenty-five dollars to Rev. Wm. Watson to be applied on his salary for Shady Grove Church.

"Third. I will all my property of whatever nature I may die possessed, both real and personal, to my son, Clarence Troy Henry, for and during his natural life.

"Fourth. In case my son, Clarence Troy Henry should die before arriving at the age of maturity, I give all my property both real and personal one-third each, share and share alike, to the Methodist Church South, and to Standford Wyatt, and Gus H. Powell, and I hereby appoint Samuel L. Horton and Standford Wyatt as executors and administrators of this my last will and testament without bond.

"And I hereby appoint Samuel L. Horton and Stanford Wyatt, guardians of my son Clarence Troy Henry, with W. B. Broom as advisor in regard to the education of my son. And I further will that the said executors shall have power to collect all moneys due my estate, pay all my debts my estate is due other parties, and they shall have full power to sue and be sued, and the full management of my estate and disbursements of money that in their judgment they see proper as executors and guardians, for the benefit of my son, in the matter of education or any other expense for his benefit in any way, without being amenable to court or persons.

And it is my will that my son shall be well educated out of the proceeds of my estate. And it is further my will that said executors shall have 10 per cent. of the moneys collected from my estate from time to time; that they shall have full power to collect the rents and manage the business to the best of their judgment, to sell property of the estate when necessary to pay the expenses of education or other expenses of my son, and that when my son shall become of age that the said executors shall turn over all of my estate remaining, after paying said expenses of education, etc., to him without being responsible to any court or individual."

(1) It was shown that the will was prepared by a justice of the peace, who became a witness in the case and testified as to the directions given him by the testator, and as to what he supposed was the effect of the language which he had employed in the execution of those directions, which evidence of course can not be considered by us in construing the will. It was further shown that Clarence Troy Henry, the appellee, had attained his majority, and that he was the sole heir at law of his father, there being no other children, and no widow.

(2-3) It is insisted that, when all the provisions of this will are considered and construed together, it fairly appears that the purpose of the testator was to devise the fee to his only child, with the provision that should he fail to attain his majority the estate should be divided into three equal shares as set out in the will. On the other hand, it is urged that in unmistakable language the will gives to the son only a life estate and that the concluding clause of the will, directing the executors to turn over all of the testator's estate remaining after paying the expenses of the education of his son, etc., should be construed to mean for the time for which that interest had been given him.

We deem it unnecessary to construe this will to decide the questions involved in this case. It is very certain that, if the son did not take the fee to the lands devised by the will, no one else did so, and if the son did

not take the title under the will he acquired it under the statute of descent and distributions.

In the 6th edition of Jarman on Wills, volume 1, p. 704, section 2, of chapter 21, it is said:

"Mr. Jarman states the general rule thus: 'If a will fails to make an effectual and complete disposition of the whole of the testator's real and personal estate, of course, the undisposed of interest whether legal or equitable, devolves to the person or persons on whom the law, in the absence of disposition, casts that species of property'." Citing the 1st edition of Jarman on Wills, p. 502.

It is alleged, and the undisputed proof shows, that appellee was the sole heir of his father, and it must follow, therefore, that, even though the language of the will limits the estate devised to one for life, there is nothing in the will devising the remainder to any other person. Appellee, therefore, takes the title under the statute, if the will itself does not accomplish that result.

It follows, therefore, that there has been no breach of the covenant of seisin and the decree of the chancellor will, therefore, be affirmed.