## BARLOW v. CAIN.

Opinion delivered November 15, 1920.

1. WILLS—PRESUMPTION AGAINST PARTIAL INTESTACY.—A testator is presumed to intend to dispose of his entire estate, so that wills are to be so interpreted as to avoid partial intestacy, unless the language compels a different construction.

2. WILLS—PARTIAL INTESTACY.—Where a will, after reciting that the testator disposed of the residue of his estate, real and personal, after paying his debts, as follows, followed by provisions giving lands to his wife, son and daughter, and further that "it is my will that my son, T. F. Cain, take full control of all my notes and accounts that may be due or become due after my decease, and that he, my son, T. F. Cain, is to settle all my affairs and pay all of my indebtedness against my estate," there being no provision as to disposition of his other personal estate, *held* that testator died intestate as to the residue of personalty after payment of all debts and certain small bequests.

3. WILLS—DEVISE OF INCUMBERED LAND.—Where a will devised incumbered land to a son, and directed the son to pay all of the testator's debts out of his notes and accounts, the son was entitled to have the incumbrance discharged out of the personal property of the estate.

4. WILLS—TAXES ON DEVISED LAND.—Taxes on land devised to the testator's son were not a personal obligation of the testator, but constituted a lien on the land as it passed into the son's hands, being payable by him.

Appeal from Craighead Circuit Court, Jonesboro District; *R. H. Dudley,* Judge; reversed.

*Jason L. Light* and *Sloan & Sloan,* for appellants.

1. Joseph Cain died intestate as to his personal property. Appellants are entitled to share in the personal estate. The provision is not intended as a gift to T. F. Cain, but was inserted for the purpose of naming him as executor. The provision embraces only "notes and accounts" which can not by any sort of construction be held to include tangible property or money on hand. (1) The provision was not intended as a gift to T. F. Cain. "Take full control" is not synonymous with "give" or "bequeath." The latter words are much broader in meaning. 23 Ga. 472. "Absolute control means to manage but does not mean a gift." 62 Tex. 54, 61; 13 So. Rep. 744-6; 98 Ala. 426; 10 Atl. 577; 59 Vt. 557; 37 S. W. 924-7; 58 Am. St. 619. Cain was merely to take control and manage the notes and accounts and settle up the estate, that is, act as executor. The books are full of cases of partial intestacy. An express provision in a will that certain relatives shall receive no part of the testator's

property is utterly ineffectual as to intestate property. 163 Ill. 149; 81 Md. 347; 32 Atl. 316; 44 *Id.* 103; 59 Kan. 771; 132 N. Y. 338; 1 O. S. 279. Under our statute requiring the mention of names of children, this clause was intended for no other purpose than to make gifts of land to son and daughter valid. As to his personal estate, he died intestate. A testator is presumed to dispose of his entire estate, and partial intestacy is to be avoided unless the language of the will compels a different construction. 111 Ark. 54-61; 116 *Id.* 328. See, also, 228 Pa. St. 248; 77 Atl. 450; 4 Ind. 519; Page on Wills, 549-554.

2. In any event, a gift of notes and accounts can not tangible property, bank deposits and cash on hand. 51 N. H. 78; 40 Cyc. 1548 (XII).

3. T. F. Cain, the appellee, and Effie Darr took the land devised to them *cum onere,* and the administrator, T. F. Cain, did not have the right to pay the unprobated mortgage debt of the Commonwealth Farm Loan Company out of the funds of the estate. The land was subject to the mortgage debt at the time of the execution of the will and the death of the testator, and T. F. Cain and Effie Darr, devisee, took the land charged with the mortgage debt and had no right to exonerate the land from the lien by using funds of the estate for this purpose. 27 Barb. 610; 4 Bradf. 324; 111 N. Y. 270.

The statutes of this State contemplate that incumbrances on desired real estate shall either be paid by the devisee or by sale of the incumbered property, and that, in case the devisee should not elect to accept the devise and pay off the debt, no funds of the general estate should be used to discharge the incumbrance until the devised real estate has first been exhausted. Kirby's Dig., § 8018; Page on Wills, § 766; 110 Ark. 70-78; 33 N. J. Eq. 262; 128 Ark. 317-20.

4. The administrator was without authority to pay an unprobated claim out of the general funds of the estate, and the statute of nonclaim has now run. 29 Ark. 500-8; 53 *Id.* 559; 96 *Id.* 222.

5. The administrator had no right to use funds of the estate to pay taxes on devised real estate not required for the payment of debts. 2 Woerner's Law of Administration, § 518; 35 Ark. 180. All the exceptions to the settlements have really been sustained.

*Hawthorne & Hawthorne* and *D. K. Hawthorne,* for appellee.

Under the clause of the will giving Cain his personal property and full control over notes, accounts, etc., and all his affairs with instructions to pay all debts, the testator intended to include everything. 1 C. J. 596; 115 Ark. 9. This case is very controlling. See, also, 214 S. W. 813; 104 Ark. 439-448.

HUMPHREYS, J. This appeal involves the construction of the last will and testament of Joseph Cain, deceased. The will is as follows:

"I, Joseph Cain, of the county of Craighead, and in the State of Arkansas, being of sound mind and memory, and considering uncertainty of life, do therefore make, ordain, publish and declare this to be my last will and testament, revoking all former wills.

"That is to say, first: I commend my body to mother earth who gave it and to be buried in Christian manor; and then, after paying all my lawful debts, I give and bequeath and dispose of the residue of my estate, real and personal, as follows, towit: First, to my wife, Elizabeth C. Cain, I give the farm on which I live, or as much thereof as she has cause to use, with all singular the appurtenances thereunto belonging during her natural life or widowhood.

"Second: I give to my son, T. F. Cain, all of the southwest quarter of the northwest quarter of section twenty (20), in township fifteen (15), range five (5), east, except a strip sixteen (16) rods wide across the south end, leaving thirty-two acres herein conveyed. Also south half of the northwest quarter of northwest quarter of section twenty (20), township fifteen (15), range five (5) east, containing twenty (20) acres.

"Also, it is my will that my son, T. F. Cain, take full control of all my notes and accounts that may be due or become due after my decease, and that he, my son, T. F. Cain, is to settle all of my affairs and pay all of my indebtedness against my estate.

"And to my daughter, Effie Darr, and her bodily heirs, I will and bequeath the part of south half of southwest section 17, containing twenty acres; also the north half of the northwest quarter of the northwest quarter, section 20, all of the above described land in township 15 north and range 5 east.

"Also, the heirs of my daughter, Sallie Adams, and my daughter, Emma Akers, and my daughter, Lelia Adams, be willed one dollar each.

"In witness whereof, I have subscribed my name and affixed my signature hereunto, this the 8th day of August, 1916.

"Joseph Cain."

On the 3d day of October, 1917, T. F. Cain was appointed administrator, with the will annexed, of the estate by the probate court. In the course of the administration he procured an allowance to himself of $525 which he had paid out of his individual funds to the Commonwealth Farm Loan Company in satisfaction of a mortgage existing on the land which his father had bequeathed to him; also an allowance of $13.10 for taxes paid by him upon said real estate; also $961.29 paid to himself personally as legatee in the will. The grandchildren of Joseph Cain, deceased, excepted to the three allowances aforesaid. Judgment was rendered by the probate court overruling the first exception and sustaining the two latter exceptions. From that judgment an appeal was prosecuted to the circuit court, where, upon trial *de novo,* each exception was overruled and the settlement of the administrator approved. From the judgment of the circuit court overruling the exceptions an appeal has been duly prosecuted to this court.

Joseph Cain, deceased, purchased the land from George B. Darr and Effie Estella Darr, on November 11, 1915, for $1,000, $500 of which sum he paid, and, instead of paying the balance of the consideration, assumed the payment of the $500 mortgage which the grantors had executed to the Commonwealth Farm Loan Company. In the deed of conveyance, George B. Darr and Effie Estella Darr retained a lien upon the land to secure the payment of the mortgage indebtedness aforesaid.

It is insisted by appellants that the circuit court erred in construing the will to bequeath to appellee the personal estate of the testator. Appellee insists that, interpreted in the light of the presumption against partial intestacy, the personal estate passed to him under the latter part of the first clause, which is as follows, towit: "I give and bequeath and dispose of the residue of my estate, real and personal, as follows, towit:" and the third clause, which is as follows: "Also, it is my will that my son, T. F. Cain, take full control of all my notes and accounts that may be due or become due after my decease, and that he, my son, T. F. Cain, is to settle all my affairs and pay all my indebtedness against my estate." The rule of presumption against partial intestacy, applicable in the construction of wills, is aptly stated in *Booe* v. *Vinson,* 104 Ark. 439, in the following language: "A testator is presumed to intend to dispose of his entire estate, and it is to be borne in mind in the construction of wills that they are to be so interpreted as to avoid partial intestacy, unless the language compels a different construction." The question then is whether the language of the will under construction compels a different interpretation. The latter part of the first clause does not. It reveals a desire to make testamentary disposition of the residue of the testator's estate, both real and personal, in manner thereafter to be designated. It is tantamount to saying and only saying that the testator is going to devise and bequeath his real and personal property in subsequent clauses of the will. The

language, however, used in the third paragraph of the will clearly conflicts with the presumption against partial intestacy. That paragraph is a direction for his son to settle all his affairs and pay his indebtedness with his notes and accounts, and the son was authorized to assume full control of the notes and accounts for that purpose. Only two classes of personal property—notes and accounts—were dealt with in the paragraph, chattels, money and other classes of personal property being omitted. The testator understood the use of the words "give and bequeath" as evidenced by their use in other paragraphs of the will, and, had he intended by the third clause to give his son all his personal property, after paying his indebtedness, he would have used these words, or words of similar import, instead of conferring full control over them to his son, and would have included all his personal property, instead of designating a particular class of it. No provision appears elsewhere in the will for an executor, and we think this clause was intended by the testator for that purpose. The language of the paragraph being insufficient to bequeath the personal estate, the testator died intestate as to the residue of the personal property, after the payment of all debts and small bequests provided in the will; so it was error to overrule the exception to the allowance of the residue of the estate to appellee.

This conclusion renders it necessary to determine whether the allowance of $525, expended by appellee in payment of the mortgage on the real estate devised to him, was proper. Appellants contend that appellee took the real estate as devisee with a lien or incumbrance against it. We think not, for there is a provision in the will to the effect that the testator's debts should be paid with proceeds of notes and accounts. The only question then is whether the testator personally obligated himself to pay the mortgage indebtedness. He specifically assumed the mortgage indebtedness as a part of the consideration in the purchase of the land. Learned coun-

sel for appellee contend that this view of the case conflicts with the rule announced by this court in *Rice* v. *Felker,* 110 Ark. 70, and reiterated in *Walker* v. *Mathis,* 128 Ark. 317. Not so. The point decided in those cases is that a mortgagee does not lose his right to proceed against the land and the original mortgagor because a grantee of the mortgagor had assumed the payment of the mortgage. The court was therefore correct in overruling appellant's exception to this allowance.

Lastly, it is insisted by appellant that the court erred in allowing appellee $13.10 expended in liquidating taxes against the land. The taxes were not a personal obligation of the testator. They constituted a lien upon the land merely, and, thus burdened, it passed into the hands of the devisee. It was the devisee's, and not the administrator's duty to pay it. It was error to overrule the exception of appellants to this allowance.

For the errors indicated, the judgment is reversed and the cause remanded with directions to render judgment in accordance with this opinion.