BRADSHAW *v.* PENNINGTON, ADMINISTRATOR.

5-732                                    283 S. W. 2d 351

Opinion delivered October 24, 1955.

[Rehearing denied November 28, 1955.]

*Marcus Evrard* and *Collins, Core & Collins,* for appellant.

*Shaw & Spencer* and *Shaver, Tackett & Jones,* for appellee.

LEE SEAMSTER, Chief Justice.   Dr. L. B. Gunnels died a resident of Mena, Polk County, Arkansas, at the age of 88 years, on the 7th day of March, 1954.   He was unmarried and without descendants.   Dr. Gunnels was survived by one brother, J. B. Gunnels; two sisters, Lucy Jane Halfacre and Bettie Pennington; one niece, Gertrude Gunnels Bradshaw, daughter of a deceased brother;

and two grandnephews, James and Robert Anderson, brothers, who are grandsons of a deceased sister, all constituting the heirs at law of Dr. L. B. Gunnels.

On March 12, 1954, the petition to probate six sheets of holographic writings as the last will and testament of the deceased was filed in the Probate Court of Polk County, Arkansas. Five of these sheets were in identical form, with the exceptions that each contained a different beneficiary and a different list of enumerated property. Each of the five sheets contained in form the following:

"4/2/37 Mena Ark.
this is my last will.

I give, bequeath and devise to (here appears in each the beneficiary name. In one it is "my brother J. B. Gunnels"; in another, "my Niece, Gertrude Gunnels, Calvin's Daughter"; in another, "Esther Ruth"; in another, "my sister Jane Halfacre"; in another, "my sister Bettie Pennington") "in complete and perfect ownership all my right and property of every claim and Nature whether real Personal or mixed wherever situated as written below." (Then in each of these five sheets of holographic writings there follows a list of real and personal property, each list setting forth specific property and not duplicating any items set out in the other lists.)

/s/ L. B. Gunnels"

The sixth sheet of holographic writing contains the following:

"4/2/37 Mena Ark.
this is my last will.

I Give, bequeath and devise to my Nephews and Neices, that I havent given any property to all the Rest of my property (Then follows a list of real and personal items, still not duplicating any items set out in the other five sheets.)

Rest money after any Funeral expenses is Paid

/s/ L. B. Gunnels"

Each of the six sheets of holographic writings was complete in itself; that is, no portion of one sheet was carried over to the next sheet and each was separately headed, dated and signed by L. B. Gunnels. The six sheets were found together in an envelope marked ''Last Will of L. B. Gunnels, In case of death to be opened and read by Fred C. Embry.''

These six sheets of holographic writings constituted the entire proffered will of Dr. L. B. Gunnels. They were offered for probate by Olen Pennington, nephew of the deceased, and certain other relatives and heirs of the deceased. On March 13, 1954, the will was probated in common form without notice and Olen Pennington was appointed administrator with the will annexed.

Following entry of the order appointing him administrator, Olen Pennington commenced with the administration of the estate and filed an inventory and appraisal. On April 1, 1954, he filed a petition requesting certain constructions by the Probate Court of some of the provisions contained in the six sheets of the will. Notice of the filing of this petition was given, and as a result of this notice, Gertrude Bradshaw contested the probation of these six sheets as Dr. Gunnel's will. She was later joined by the other appellants herein.

The cause was tried by the Polk Probate Court on September 1st and 2nd, 1954. This litigation involved two phases, (1) the contest of the will by the appellants, and (2) determination as to the construction of certain provisions of the will in the event it should be admitted to probate. The Probate Court rendered a decision, contained in an opinion composed of two parts, the second of which was rendered on November 8, 1954. By virtue of that opinion, the court found that the six sheets of holographic writings, when viewed together, constituted one complete will and ordered such writings admitted to probate as the valid holographic will of Dr. L. B. Gunnels. It was the opinion of the trial court that the first five sheets naming individual legatees, be limited to the specific property listed on each sheet, and the wording

on the last page, when read together with the other five pages, shows an intent by the testator to give what is left of the estate to the nephews and nieces not remembered elsewhere in the will, therefore, it would constitute a residuary legacy and would pass all property not listed in the first five sheets of the will.

Appellants prosecute this appeal from the judgment of the Probate Court. They contend that the trial court's decision should be reversed for the following reasons: (1) the trial court failed to consider appellant's most serious objections to the probate of these six sheets; (2) each one of the five sheets naming specifically an individual legatee is a complete will in itself, each one effective to pass the entire estate to its respective legatee; resulting in each one of the five being in irreconcilable conflict with each one of the other four, so that they mutually destroy one another and none can be admitted to probate; (3) the sheet naming ''nephews and nieces I havent given any property to'' is too indefinite, both as to who is to take and what property is intended to pass thereunder, to qualify for probate; (4) the findings by the Probate Judge, that these six sheets before the Court constitute all the writings left by the testator as his last will, are against the preponderance of the evidence; (5) in the interest of future testators and the probate law generally, this collection of holographic sheets should be denied probate as a will; and, (6) the testator intended to limit each sheet to the specific property listed, and the findings of the Probate Judge to the contrary are against the preponderance of the evidence.

The appellants contend that each of the sheets is a complete will in itself, each effective to pass the entire estate to its respective legatee; resulting in each one of the sheets being in irreconcilable conflict with the others, so that they mutually destroy one another and none can be admitted to probate. The law is well settled as to a testator's right to make a number of testamentary documents, each dealing with a separate portion of his prop-

erty. In 57 Am. Jur., page 190, § 228, we find the following:

"SEPARATE INSTRUMENTS — It is elementary that a will may be comprised of two or more separate documents. A man can have only one will, but that will may consist of several different testamentary papers of different dates. It is the aggregate or the net result of several testamentary writings left by a decedent that constitutes his will, or, in other words the expression of his testamentary wishes. Such is the case not only where one instrument is a codicil to the other, or is incorporated in the other by reference, but also where the instruments are executed and attested as wills independently of one another with the formalities prescribed by statute, provided the one does not revoke the other, expressly or by reason of inconsistency between the instruments, in respect of their provisions. It is undisputed that a testator may, at his volition, make a number of testamentary documents each dealing with a separate portion of his property. A testator may with propriety execute one testamentary instrument disposing of his property at his domicil and another disposing of property located elsewhere."

Two or more wills may be probated and effectuated in the same way that a will and one or more codicils are construed together. The task confronting a court in construing a will is, of course, to ascertain the intent of the testator, and, in doing that, isolated words or sentences should not be considered by themselves, but the language of the whole document or documents, which taken together constitute the will, should be considered, and all parts of same, if possible, given effect. This must be done from the language used as it appears from the consideration of the entire instrument, and when such intention is ascertained it must prevail, if not contrary to some rule of law, the court placing itself as near as may be in the position of the testator when making the will. See *Clemenson* v. *Rebsamen,* 205 Ark. 123, 168 S. W. 2d 195; *Jackson* v. *Robinson,* 195 Ark. 431, 112 S. W. 2d 417.

When all of the competent and creditable testimony in the record is carefully considered together, a preponderance of the evidence sustains the six sheets of writing as the whole, valid and last unrevoked will of Dr. Gunnels. Counsel for appellants argue that there "may" have been other sheets, but there is no evidence of any other, and there is evidence that these six sheets compose the whole will. All six sheets are dated the same day; each follows a "will form" which Dr. Gunnels possessed; each page or sheet was signed by Dr. Gunnels; and, all six sheets were found pinned together. When all of the sheets are read together, they show an intent of the testator to leave separate portions of his estate to specific legatees. Therefore, after giving careful consideration to the first five points raised by the appellant for reversal, it is our opinion that the trial court's decision should be affirmed, as to that portion of the judgment that admitted the six holographic sheets to probate as the last will of Dr. Gunnels.

The sixth point raised by the appellants, "That the testator intended to limit each sheet to the specific property listed," calls for a more meticulous examination of the will from its four corners and a view of all of its terms.

The courts have, in a long list of cases, given recognition to certain general rules to be observed in the construing of a will. *Galloway* v. *Darby,* 105 Ark. 558, 151 S. W. 1014, is one of the leading cases which announced the general rule, that a will should be, if possible, construed so as to avoid intestacy. This case stated: "A testator is presumed to intend to dispose of his entire estate, and it is to be borne in mind in the construction of wills that they are to be so interpreted as to avoid partial intestacy, unless the language compels a different construction." In this case, considerable weight was given to the introductory portion of the will, in which the testator said, among other things: "As to my worldly estate and all property, real, personal or mixed, of which

I shall die seized and possessed or to which I shall be entitled at the time of my decease, I devise . . ."

The Galloway case was cited in *Barlow* v. *Cain*, 146 Ark. 160, 225 S. W. 228. The Barlow case reveals that Joseph Cain made a will, in which the following language appeared: ''And then after paying all my lawful debts, I give and bequeath and dispose of the residue of my estate real and personal, as follows towit:'' Here he gives specific real estate to his widow, son and daughter, as well as one dollar to each of the heirs of his two deceased daughters. In the 3rd clause of his will, he said: ''Also, it is my will that my son, T. F. Cain, take full control of all my notes and accounts that may be due or become due after my decease, and that he, my son, T. F. Cain, is to settle all of my affairs and pay all of my indebtedness against my estate.'' In construing this will, the court said: ''The language of the paragraph being insufficient to bequeath the personal estate, the testator died intestate as to the residue of the personal property, after the payment of all debts and small bequests provided in the will . . .''

In the case of *Smith* v. *Smith*, 219 Ark. 304, 241 S. W. 2d 113, the following paragraph appeared in Dollie Smith's will: ''I give my home in Blytheville . . . to my daughter, Lorene (Smith) Smith to be used by her as a home as long as she wishes, and in case she should not use it as such and wish to sell it, then the proceeds to be divided between my son, Floyd Smith, and my daughter, Lorene (Smith) Smith in equal shares.'' In construing the above paragraph, the court said: ''The appellee relies also upon the presumption against partial intestacy to support her contention that she owns the fee. But this is merely a presumption, and it certainly does not operate to convert a life estate into a fee in every case in which the life estate might have been more accurately described. Here the presumption is materially weakened by the existence of other instances of partial intestacy in the same will. In devising her other two parcels of land Dollie Smith made no provision

for their devolution in the event that both her children died without issue, and hence the testatrix died partly intestate as to these tracts. In this situation we are more readily inclined to accept the existence of partial intestacy as to the land now in controversy.''

In *Williams* v. *Norton,* 126 Ark. 503, 191 S. W. 34, we have a case where A. B. Williams died testate. He owned some 4,200 acres of land and certain personal property. He was survived by his widow, four sons and two daughters. Mr. Williams left a homestead and certain lands to the widow for life and disposed of his personal property. He appointed two of his sons executors and empowered them to collect his accounts and settle his debts, to rent or sell the rest of his real estate as in their opinion seemed best. The proceeds from the sale of real estate were to be paid ⅓ to the widow and ⅔ to his daughter, Kate Old, for the use of herself and children so long as she remained a widow.

The following paragraph appeared in his will: ''If I have made any omissions in the directions about my bequests herein, my said executors are fully empowered to supply them. My son, R. B. Williams and I own some land jointly as tenants in common, which I wish disposed of as I have directed about my lands held in my own right. Any residuum not provided for herein I wish to be given to my daughter, Kate Old.'' In construing the will, the court stated, in part: ''In the absence of any language in the will which either expressly or by necessary implication carries the idea that he intended to devise the fee simple title to anyone, the presumption against partial intestacy so far as the lands are concerned cannot be indulged.

''In the old English case of *Denn* v. *Gaskin,* 2 Cowp. 657 (1777), Lord Mansfield declared, that 'though the intention is ever so apparent, the heir at law must of course inherit unless the estate is given to somebody else.' . . .

"*Schauber* v. *Jackson,* 2 Wend., N. Y., 13, is one of the leading cases in this country. . . . The court for the correction of errors there held, 'if there is not sufficient in a will to take the case out of the rule that all of the estate which is not legally and sufficiently devised to some other person must go to the heir, the heir will take whatever may have been the intention of the testator.'

"Following this decision, the Supreme Courts of Virginia and Georgia, also in cases where there is an exhaustive review of the authorities, held that 'an heir can be disinherited only by express devise or necessary implication, so strong that a contrary intention cannot be supposed; that the heir cannot be disinherited unless the estate is given to somebody else.' *Boiseau* v. *Aldridges,* 5 Leigh's Rep. 222, 27 Am. Dec. 590; *Wright* v. *Hicks,* 12 Ga. 155, 56 Am. Dec. 451.

"In the last above case it was held (quoting syllabus): 'Intent to disinherit heir is essential to raise an estate by implication, the presumption being, in the absence of plain words in the will to the contrary, that the testator intended that his property should go in the legal channel of descent.' See, also, *Doe ex dem. Clendenning* v. *Lanius,* 3 Ind. 441, 56 Am. Dec. 518.

"Applying the doctrine of the above cases to the will under review, there is certainly no language in it that either expressly or by necessary implication overcomes the presumption that A. B. Williams intended that his real estate, subject to the uses to which he had subjected it under the provisions of his will, should go in the legal channel of descent. To hold otherwise would be to make a will for the testator, and one too that would create an unjust discrimination in favor of the heirs of Mrs. E. C. Old as against the other heirs of the children of A. B. Williams."

In order to discover the dominant testamentary scheme or overall intention of the testator, we must examine the manner in which Dr. Gunnels prepared his will, together with the provisions as contained in the six

sheets of the will.  The apparent meaning of particular words, phrases or provisions should be harmonized, if possible, to such scheme, plan or dominant purpose that appears to be the intention of the testator.

The instant case reveals that Dr. Gunnels had evolved a plan whereby certain specific properties were to be left to specified legatees.  The testator, in all probability, had before him a list of the properties to be disposed of, at the time he made his will, or at least he had said properties well in mind.  He refers to the property which he bequeathed and devised as "my property." We denote that no reference is made to his estate; to property that he might own at his death (except money); to property he might die seized and possessed; or, any of the usual terms that would indicate that he meant to dispose of after-acquired property in the will.

Each of the first five sheets contain the language "I give, bequeath and devise (to a named beneficiary) in complete and perfect ownership all my right and property of every claim and nature whether real Personal or mixed wherever situated as written below," then he describes certain specific properties.  In the sixth sheet, he devised to his nephews and nieces "all the rest of my property," then without punctuation or further stating as written below, he described six separate tracts of real estate, $2,000 in government bonds, bank stock, a mule, two cattles and "rest money after funeral expenses is paid."  The language used by the testator in disposing of his money in this manner indicates that he knew the proper language to use in disposing of after-acquired property.  The failure to use such language indicates that he intended to devise only the property he specifically set out in his will.

In view of the unusual manner in which Dr. Gunnels prepared his will and after examining the provisions of the will, we are unable to say that he intended to leave the nephews and nieces his after-acquired property, since he limited them to specific property in his will.  The testator disposed of "all my right and property" in the

first five sheets of his will; the sixth sheet disposes of "all the rest of my property." In each sheet of the will he specifically sets out with particularity, each item of property that he wishes each beneficiary to have at the time of his death. We find that the testator died intestate as to all of the property that he owned at the time of his death, with the exception of that property which was specifically described in his will.

In regard to partial intestacy, the Ark. Stats., Section 60-411, provides as follows:

"PARTIAL INTESTACY — If part but not all of the estate of a decedent is validly disposed of by will, the part not disposed of by will shall be distributed as provided by law with respect to the estate of intestates." See also *Wyatt* v. *Henry,* 121 Ark. 479, 181 S. W. 297.

That portion of the judgment of the Probate Court, construing the will to give the nephews and nieces all the balance of the property belonging to the estate, is reversed and remanded, with instructions to proceed with the administration of the estate according to law and not inconsistent with this opinion.