REITER *v.* CARROLL.

4-8000                                          198 S. W. 2d 163

Opinion delivered December 2, 1946.

Rehearing denied January 13, 1947.

*Marvin B. Norfleet,* for appellant.

*Daggett & Daggett,* for appellee.

ED. F. McFADDIN, Justice. This appeal results from an unsuccessful attempt by the appellants to have

the chancery court declare the appellee to be a trustee *ex maleficio*. J. N. Carroll was the father of eight children, seven of whom survive him. The appellants are five of Mr. Carroll's children, and also two grandchildren (heirs of his deceased child). The appellee is a child of Mr. Carroll. Mr. Carroll's other child is neither appellant nor appellee, but was a party to this cause in the lower court.

In March, 1934, when he was about to submit to surgery, Mr. J. N. Carroll executed his holographic will, and delivered the same to his son, J. H. (Jim) Carroll, appellee. Mr. Carroll recovered from the operation, and lived until July 25, 1945, when he departed this life at the age of 84, a widower, a citizen of Lee county, Arkansas, and seized and possessed of 200 acres of land and certain personal property. On September 14, 1945, appellee had the will of March, 1934, admitted to probate in common form, and became the executor of the estate and the chief beneficiary under the will. The probate of the will was never contested (see Act 401 of 1941); but on November 21, 1945, the appellants filed this suit against appellee, individually and also as executor, seeking to have appellee declared trustee *ex maleficio* of the entire estate of Mr. J. N. Carroll for the benefit of the appellants.

The complaint alleged, and the proof—as viewed most favorably to appellants—established these facts:

1. After J. N. Carroll recovered from his 1934 operation, he stated that he wanted his will destroyed, so that all of his children could share equally in his estate.

2. The appellee had the said will in the bank at Brinkley, and J. N. Carroll instructed the appellee to destroy the will.

3. Appellee advised his father that he had destroyed the will.

4. Instead of destroying the will as he had promised to do, and as he stated he had done, the appellee kept the will in the bank, and after his father had

passed away, appellee had the will probated, and then claimed as the chief beneficiary thereunder.

The chancery court refused the requested relief; and the appellants have appealed.

*The Appellants' Theory of the Case.* The appellants frankly and candidly admit that the 1934 will was not revoked in accordance with § 14519, Pope's Digest; but they claim that this revocation was prevented by the fraud of appellee, in that he reported to the testator that the will had been destroyed. The appellants urge that, since appellee prevented the destruction of the will, then equity will not allow him to profit from his own fraud, and that equity will declare him to be a trustee *ex maleficio* (*i. e.,* through his own wrong) for the benefit of the heirs of J. N. Carroll. To sustain their theory of the case, appellants cite, *inter alia,* these cases from our court: *Baron* v. *Stuart,* 136 Ark. 481, 207 S. W. 22; *Ripley* v. *Kelly,* 207 Ark. 1011, 183 S. W. 2d 793; *Stacy* v. *Stacy,* 175 Ark. 763, 300 S. W. 437; *Moore* v. *Oates,* 143 Ark. 328, 220 S. W. 657. Appellants also cite, *inter alia,* 28 R. C. L. 182, where, in discussing fraudulent prevention of revocation, this statement appears:

" . . . a devisee who by fraud or force prevents the revocation of a will may in a court of equity be considered a trustee for those who would be entitled to the estate in case it were revoked."

And appellants cite the following cases to sustain the above-quoted text: *Gaines* v. *Gaines,* 2 A. K. Marsh (Ky.) 190, 12 Am. Dec. 375; *Blanchard* v. *Blanchard,* 32 Vt. 62; *Dowd* v. *Tucker,* 41 Conn. 197; *Brazil* v. *Silva,* 181 Cal. 490, 185 Pac. 174; *Dye* v. *Parker,* 108 Kan. 304, 194 Pac. 640, 195 Pac. 599.

## OPINION

After giving the evidence offered by the appellants its full force and effect, and after carefully studying the appellants' theory of the case and the authorities cited, we reach the conclusion that the appellants are not en-

titled to the relief sought, and the decree of the chancery court must be affirmed. This is our process of reasoning:

1. *The Testator Did Not Revoke His Will in the Form and Manner Provided by Law.* Our statute on the revocation of a will is § 14519, Pope's Digest:

"No will in writing, except in cases hereinafter mentioned, nor any part thereof, shall be revoked or altered otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation and alteration, and executed with the same formalities with which the will itself was required by law to be executed, or unless such will be burnt, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some other person, in his presence, by his direction and consent, and when so done by another person the direction and consent of the testator, or the fact of such destruction, shall be proved by at least two witnesses."

It will be observed from this section that, in order to effect a legal revocation, short of executing another will, the testator must either (a) execute a written instrument of revocation with due solemnities, or (b) personally burn . . . or destroy the will with the intent to revoke it, or (c) have some other person in testator's presence and by his direction, to burn . . . or destroy the will, "and when so done by another person, the direction and the consent of the testator, or the fact of such destruction, shall be proved by at least two witnesses."

In the case before us the testator did not personally destroy the will, and never caused the will to be brought into his presence for destruction. So, the will was not revoked in the form and manner required by law. In 68 C. J. 814, in discussing by whom the act of revoking a will may be committed, this rule appears:

"General authority, however, to destroy a will is not sufficient to justify a cancellation at a remote period upon the exercise of the will and discretion of the agent, without further sanction, knowledge, or direction on

the part of the testator, and, where, as in some juris-
dictions, the statute requires that the act of revocation
when done by a third person be in the presence of the
testator, it is, of course, essential that there be a com-
pliance with the statute, . . . ''

And in *Page on Wills,* Lifetime edition, § 424, the
rule is stated:

"The statutes which permit some person other than
testator to revoke testator's will by some act which is
manifest thereon, such as burning, tearing, and the like,
usually provide that such act of revocation must be in
testator's presence and by his authority. Under such
a statute it would seem that testator could not give to
another a power to revoke testator's will by some act
which is manifest thereon, in a manner which did not
comply with the statutory provisions on this subject."

This strict rule, requiring certain acts to be done
in a particular way to constitute revocation, may seem
very arbitrary; but, when we consider the situation
existing before the adoption of such rule, we see the
salutary effect thereof. In England prior to 1676 a man
might execute a solemn will, making the desired disposi-
tion of his property. Then, after his death, disappointed
heirs could, for a price, find many witnesses who would
testify that the testator had told these witnesses that
he had decided to revoke his will. Such testimony was
allowed to destroy the will, with the result that the most
solemn wills were defeated by witnesses who swore that
the testator had made an oral revocation. So flagrant
did this practice become, that in 1676 the English Parlia-
ment passed the salutary statute known as 29 Chas. II,
Chap. 3. Sections 6 and 22 of that act not only prevented
the oral revocation of a will, but prescribed minutely the
acts short of which there could be no revocation of the
will.

The English statute of 29 Chas. II, Chap. 3, entitled
"An Act for the Prevention of Frauds and Perjuries"
has been adopted in one form or other in most of the
American States. It has been the inspiration and pattern

for the Arkansas statutes which may now be found in Pope's Digest, §§ 6059, 6061, 6062, 6063, 6064, 6065, 14515, 14516, 14517, 14518 and 14519. This last § 14519, as previously copied, comes literally from Chap. 157, § 6 of the Arkansas Revised States of 1838 (as approved on March 3, 1838), which amplified an earlier act of the Missouri Territory of January 21, 1815, when Arkansas was a part of the Missouri Territory. The territorial act may be found in § 3 of the chapter on ''Wills and Testaments'' in Steele and McCampbell's *Compiled Laws of Arkansas Territory,* published in 1835. We give this history of § 14519, Pope's Digest, to show that the strict rules covering revocation of a will are as old as our statehood, and have been found most salutary. In considering a document as solemn as a last will and testament, the courts must carefully follow the law, and every man is presumed to know the law. So, if Mr. J. N. Carroll had wanted to revoke his will, he should have pursued one of the methods provided by § 14519, Pope's Digest, as previously listed. This he failed to do, so his will of March, 1934, was never legally revoked.

II. *The Appellants Have Failed to Show That the Testator Was Prevented by the Appellee From Accomplishing Acts Which Would Have Resulted in a Legal Revocation of the Will.* The most that the appellants proved in this regard was that Mr. Carroll instructed the appellee to destroy the will, and that the appellee told him that the will had been destroyed. Even if the appellee had destroyed the will, it would have been out of Mr. Carroll's presence, and such destruction would have worked no legal revocation. In other words, Mr. Carroll's act in merely telling the appellee to destroy the will, was not a revocation; and the statement by appellee, that such a destruction had been accomplished—while false and therefore reprehensible— nevertheless, was not sufficient to constitute an actionable fraud, because, even if the statement had been true, and the will had been destroyed, there was still no legal revocation. Before one may be held to be a trustee *ex maleficio* in a case such as this, the proof must show that the defendant's conduct was such as to have prevented the testator from

accomplishing what would have amounted to a legal revocation. To hold that any less quality or *quantum* of proof is sufficient, would be to repeal or overturn the Statute of Frauds, and allow a will to be revoked by a mere oral declaration. This is exactly what would be accomplished if the appellants prevailed in this case, because all that Mr. Carroll ever did was to declare orally that he wanted the will revoked.

In *Page on Wills*, Lifetime Edition, after stating that the will may be probated, even where its revocation was prevented by force or fraud, the author makes this most enlightening statement in § 444 on the power of equity:

"A different question is presented where the disappointed heirs recognized the validity of the will as a formal legal instrument; but attempted to prevent the fraudulent devisee or legatee from reaping the fruits of his wrong doing, by applying to equity to have him held as trustee for those who would have taken the property if the will had been revoked. There has been some authority for this view in obiter.[1] In the few cases in which the question has been presented squarely for decision, we find a conflict of authority. It has been held in Ohio that equity is bound by the words of the statute which regulates the revocation of the will, and that oral evidence is inadmissible to show fraud and duress for the purpose of holding the devisee or legatee as a trustee, as this, in effect, will amount to treating testator's oral declarations as revocation of the will in equity.[2] In an Illinois case, testator was so feeble for more than two months before his death that he was unable to leave his house, and most of the time he was confined to his bed, while his will was in a neighboring town five miles away. He requested two of the devisees under such will, who were his sons, living in testator's

---

"[1] *Card* v. *Grinman*, 5. Conn. 164. Some wrongdoer 'may in a court of equity be considered a trustee.' *Gains* v. *Gains*, 9 Ky. (2 A. K. Marsh) 190, 12 Am. Dec. 375.

"[2] 'The Statute was designed to prevent the frauds and perjuries arising out of mere parol revocations, and to sanction a recovery in this case would open the door for the very evils which the statute intended to exclude.' *Kent* v. *Mahaffey*, 10 O. S. 204.

house, to have a lawyer brought to testator's house so that he might change his will; but such devisees refused to comply with his request and threatened violence to anyone who would bring a lawyer to their father or in any manner render assistance to him in changing or revoking such will. It was held that equity could not set aside such will at the instance of the other heirs; and that a bill in equity which set up such facts and sought such relief was subject to demurrer.[3] In a California case, on the other hand, the beneficiary induced the testator by fraud to believe that the will was destroyed, by telling the testator that the will was in an envelope, which envelope was burned in testator's presence. While the court had previously held that probate could not be denied because of such facts,[4] the beneficiary under the will was held as trustee for the heirs.[5]"

We do not have, here, the use of force as in the Illinois case, *supra*. If we had such a case, we think equity might well have granted relief. Nor do we have before us facts comparable to those in the California case, *supra*. There the testator followed the law by requiring the will to be brought to him for destruction, and by fraud was prevented from destroying the instrument. In such a case equity could well grant relief. But, in the case here at bar, the testator did not have the will brought to him for legal destruction. He merely made a request which was not sufficient—even if observed—to constitute legal revocation. So, the appellant's proof falls short of a case for equitable intervention. In addition to the cases cited by the appellants to support their theory of the case, as previously mentioned, and in addition to the cases discussed in *Page on Wills, supra,* other cases may be found collected in an annotation in 41 L. R. A. N. S. 105 on "Effect of Interference with Revocation of a Will," particularly those cases collected on page 109 in the subtopic "Effect Upon Right of Legatees and Devisees to Take." See, also, the an-

---

"[3] *Bohleber* v. *Rebstock*, 255 Ill. 53, 41 L. R. A. (N. S.) 105, 99 N. E. 75.

"[4] *Estate of Silva*, 169 Cal. 116, 145 Pac. 1015.

"[5] *Brazil* v. *Silva*, 181 Cal. 490, 185 Pac. 174."

notation in 98 A. L. R. 474, and see, also, 68 C. J. 824, § 529 on "Preventing Revocation." To discuss all of these cases would unduly extend this opinion; but we believe the reasonable rule deducible from the cases, on prevention of revocation as a ground for equitable relief, may be summarized as follows:

Before there is made a case for equitable intervention, the plaintiff must prove these two essentials: (1) that the testator undertook to accomplish acts which would have resulted in a legal revocation of the will, and (2) that the testator was prevented from the fulfillment of such acts by the force or fraud of the defendant. When these two essentials are proved, then a case is made for equitable intervention. The proof of essential No. (1) should show that the testator set about to act in compliance with the Statute (§ 14519, Pope's Digest); and the proof of essential No. (2) should show the conduct of the defendant which prevented the accomplishment of the acts embraced in essential No. (1). Here, the appellants failed in their effort to prove even the first essential: that is, they did not prove that the testator undertook to accomplish acts which would have resulted in a legal revocation of the will. In short, we agree with the general statement of the rule found in 28 R. C. L. 182 (that a devisee, who by force or fraud prevents the *legal* revocation of a will, may in a court of equity be considered a trustee); but we hold that the appellants failed to offer proof to bring this case within that rule.

In their theory of the case, the appellants cited the several Arkansas cases hereinbefore listed. It is sufficient to say that we adhere to all that is stated in those cases, but find them clearly distinguishable, on the facts, from the case at bar. None of the Arkansas cases was on the question of prevention of revocation of a will. *Baron v. Stuart, supra,* strongly relied on by the appellants, is on the question of securing the execution of a will by fraud. But in that case the testator undertook to perform acts which would have led to the execution of a valid will showing the testator's real and intended disposition of his property. He was prevented from accomplishing

850

such intention because of acts which this court held equivalent to fraud. In such a situation we said that a case was made for equitable intervention. That case is full support for our conclusion here.

The decree of the chancery court is in all things affirmed.