HANEL v. SPRINGLE, ADM'R.

5-3130                                                      372 S. W. 2d 822

Opinion delivered December 9, 1963.

*Lee Ward* and *Howard A. Mayes,* for appellant.

*William B. Wharton, Kirsch, Cathey & Brown,* for appellee.

PAUL WARD, Associate Justice. This appeal comes from an order of the Probate Court admitting to probate the will of John P. Hanel who died at the age of 64 years. The will was offered for probate by the deceased's sister, Charlotte Springle, and it is being contested by appellant who is the deceased's brother.

John P. Hanel, who had worked as a farm hand for more than 40 years for Miss Lillian Howell and her sister, Miss Nettie Howell, had accumulated real and

personal property to the extent of approximately $30,000. He left no direct descendants; but he did leave three surviving sisters and the appellant, a brother. At the time of his death the deceased lived in the home of the Howell sisters.

In April, 1962 when Hanel became ill it was arranged for him to go to the hospital. Before leaving home, he signed the paper which was later probated as his will. After his death in January, 1963 this paper was found among his private papers in the Howell home, and it reads as set out below.

"After expenses are paid, cash to be divided to my sisters, Lottie, Josephine and Marie and Bonds 9 (1000) H, 6 (1000), 1 (500) G. Bonds, 1 (1000), 1 (500) E. Bonds, also $2,000.00 postal savings. Divide my land to my three sisters.

"My car and cattle go to Howells.

/s/ John P. Hanel"

"Witness

/s/ Nettie Howell

/s/ Lillian W. Howell"

Urging a reversal, appellant relies on the three separate grounds hereafter set out and discussed.

*One.* It is first argued: "There is no proof that John P. Hanel wanted to make a will in April, 1962, when the proffered instrument was prepared." After hearing all the testimony the trial court found that the deceased ". . . intended the aforesaid instrument to be his last will and testament." We think the evidence clearly supports that finding. The unquestioned and uncontradicted testimony of Lillian Howell, 71 years old, and Nettie Howell, 69 years old, was to the following effect: while Hanel was packing his bag to go to the hospital Nettie asked him if he had made a will. His reply was that he had started to do so several times but never had. Following that, he got a list of all his assets and gave the list to Nettie as she wrote out the instrument in question.

When he was asked about his brother, Rudolph, he replied: "Rudolph has got all of my money that I want him to have. If I gave him any, he would drink it up." Nettie and John (deceased) both used the word "will" during the discussion preceding the signing by the deceased and the sisters.

In the complete absence of any suggestion or contention that the deceased intended to do otherwise than to execute a will, we must conclude that the trial court's finding is supported by the weight of the evidence.

*Two.* We can see no merit in appellant's contention that "The proffered instrument contains no testamentary provisions." It is true, of course, that the instrument contains no such words as "devise" and "bequeath" which are often found in many wills, but, as we have often pointed out, such formalities are not necessary to the validity of a will. In the early case of *Arendt* v. *Arendt,* 80 Ark. 204, 96 S. W. 982, this Court in approving a will in the form of a letter written by the deceased to his wife, said:

"This will is in the form of a letter from William Arendt to his wife. But, to quote the language of a distinguished author, 'the law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and if this appear to be the nature of its contents, any contrary title or designation which he may have given to it will be disregarded.' "

See also the case of *Cartwright* v. *Cartwright,* 158 Ark. 278, 250 S. W. 11, where we again held a letter to be a will, using this language: "If the offered instrument is testamentary in effect, its particular form is unimportant . . . ."

See also 57 Am. Jur. *Wills* § 7 (1948), where we find:

"The question whether or not a particular writing is testamentary depends on the dispositions which it makes, and not on the form of the instrument, the use of legal or conventional terms, or the name by which it is designated."

In the instrument under consideration the deceased did not use the conventional words "give and bequeath to my sisters", but instead he used the words "to be divided to my sisters". The latter wording leaves no doubt in our minds that the deceased meant for his sisters to have his property.

*Three.* Finally, it is insisted that "The proffered instrument was not executed with the formalities required by Arkansas law for a will". This contention is based on the language used in Ark. Stat. Ann. § 60-403b (Supp. 1961) and the testimony of the Howell sisters. The above sub-section reads: "The attesting witnesses must sign at the request and in the presence of the testator".

It is admitted that the two Howell sisters signed the instrument in the presence of the deceased but it is contended that they did not sign "at the request of the testator". It is true that when each of the sisters was asked if the deceased specifically requested her to sign the instrument, the answer was that he did not. Although it appears from the above that, technically, there was a non-compliance with the provisions of the statute, we are convinced there was a substantial compliance under the facts and circumstances of this case. There can be no doubt that the deceased understood he was making a will. He was asked if he wanted to make a will, and his actions showed that he did; he was ill and was leaving for the hospital at the time; he was asked if he wanted to leave any property to his brother, and he explained why he did not; and, when he signed the instrument the two sisters were in the room with him and he saw and permitted them to sign as witnesses.

It would be a strict, if not indeed a dangerous, construction of the statute to require proof that the testator

must make a specific request of each witness to sign his name to a will to make it valid. If the strict construction of the statute here advocated by appellant were approved, it could, in all probability, invalidate many wills heretofore drawn by competent and careful attorneys. The purpose of the law relative to the execution of wills is and should be to protect testamentary conveyances against fraud and deception and not to impede them by technicalities. In the case of *Anthony* v. *College of the Ozarks*, 207 Ark. 212, 180 S. W. 2d 321, in construing the same statute here involved, we said (quoting *Rogers et al* v. *Diamond*, 13 Ark. 474):

" 'The policy of the statute is to guard against frauds in the execution of wills, so often made under circumstances when the testator is liable to be imposed upon, or unduly influenced . . . .

\* \* \* \* \*

· The fact of publication, therefore, is to be inferred or not, from all the circumstances attending the execution of the will.' "

Also, in this early case of *Rogers et al* v. *Diamond, supra,* 487, this Court, in construing this same portion of the statute said:

". . . each of the attesting witnesses must sign his name as a witness, at the request of the testator, *but such request might be inferred* from the attendant circumstances in proof by signs or gestures as well as words . . . ." (Emphasis added.)

The above quoted statement was approved in *McDaniel, ad.* v. *Crosby, et al.,* 19 Ark. 533, and also in *Leister* v. *Chitwood,* 216 Ark. 418, 423-424, 225 S. W. 2d 936.

In our opinion, the facts and circumstances revealed above amply sustain the action of the trial court in admitting subject instrument to probate as the last will and testament of John P. Hanel.

Affirmed.