ROBERT E. PULLEN, JR. ET AL *v.* ESTATE OF VIRGIE PULLEN, DECEASED

5-5362 460 S. W. 2d 753

Opinion delivered November 23, 1970
[Rehearing denied January 11, 1971.]

*G. W. Lookadoo,* for appellants.

*McMillan, McMillan & Tanner,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal involves the validity of a purported holographic codicil. On February 19, 1969, Virgie Pullen executed a properly attested typewritten will which was prepared by her attorney. In June, 1969, Miss Pullen entered the Clark County Memorial Hospital in Arkadelphia, returning to her home shortly after June 26, and remaining there until November, 1969, when she was again admitted to the same hospital. She was subsequently transferred from Clark County Memorial Hospital to a Little Rock hospital where she died on November 22, 1969. The will of February 19, 1969, containing eleven different items, was admitted to probate. A holographic writing, admittedly entirely in the handwriting of Miss Pullen was denied probate as a codicil to the will herein mentioned. From the order of the court denying the admission of this instrument to probate comes this appeal. For reversal, it is simply asserted that the court erred in refusing to admit to probate the writing in question.

The appellants are Robert E. Pullen, a nephew of the deceased, and two grand nephews. Since there is no dispute but that the statutory will of February 19, 1969, was properly admitted to probate, no mention of its provisions need be made except where pertinent to the issues in this case. We proceed to a discussion of the facts relied upon, and a photostatic copy of the writing prepared by Miss Pullen, and the other side of the paper on which it is written, are made a part of this opinion for the purpose of clarity.

Several phases of the case that we do not deem pertinent to a determination of this appeal are argued; were we to hold that the evidence establishes that Miss Pullen intended the writing to be a codicil, it would then be

necessary to pass on these additional questions. However, since we cannot agree with appellants that the evidence clearly reflects that Miss Pullen had the testamentary intent for *this writing itself* to constitute a codicil, there is no need to go further than this one facet of the litigation. It is well settled that a writing must itself evidence a present purpose to declare a bequest rather than an intention to make such a provision in the future. *Johnson v. White*, 172 Ark. 922, 290 S. W. 932. In *Stark v. Stark*, 201 Ark. 133, 143 S. W. 2d 875, we held that there can be no will unless there is the intention to make a will, and the existence of this intention is not a matter of inference, but must be expressed so that no mistake be made as to the existence of that inention.

What are the facts that support appellants' assertion that the alleged holographic codicil actually was a codicil? The strongest circumstance, if not the only one, is that Miss Pullen, while a patient the last time at Clark County Memorial Hospital, delivered to Jim Fisher, Administrative Clerk at the hospital, the will, and the handwritten alleged instrument with directions that they be placed in the hospital safe. She enclosed them in an envelope which was then put into a large paper bag and asked Fisher to place the sack in the vault, to remain there until such time as she would be able to return home; if not able to return home, Fisher was to deliver the contents to Dr. Tommy Roebuck,[1] a long time friend of Miss Pullen. Mr. Fisher said:

"She called me in her room and designated to me in her terms to take care of the will, and wanted me to place these in the vault and to be there until such time she

---

[1]It is not entirely clear, but it appears that Dr. Roebuck was not Miss Pullen's physician; in fact, it is not clear that the title of "Dr." refers to the status of a medical doctor. The envelope which contained the will and alleged codicil was apparently an evenlope that had been furnished by Miss Pullen's attorney, J. E. Still, when he prepared the instrument in February 1969, since it bore his name and return address in the left-hand corner, and on the front, stated:

"LAST WILL AND TESTAMENT OF VIRGIE PULLEN"

(To be delivered to Dr. Tommy G. Roebuck, in case of death)

492

change of will June 26 - 1969
(third) change this in Maggie Pullen
 my will
(ninth) < change
 Beverly Tatmon to one hundred
 dolare
(tenth) change to give
 1st Baptist church one thousand
eleventh) change — dent give to
 Baptist church
ninth change Mr & mrs ing to twenty five dollir
seventh) change
 Mutts To $ 500.00 five hundred (1)
 First Baptist Church To 1,000.00

~~change~~
~~discussion of the~~

change
Residue of my estate & goes to Chris
Pullen & Bruce Pullen) ecept what
should be used for debts or
setlling of estate

Filed on the ....25.... day of ...Nov.. 19 69
 FLOY TAYLOR, County Clerk
 by ...Pattie Wilson.......... D. C.

Book 5
Page 387 E X. 1

# ARKADELHIA FEDERAL SAVINGS
## DOES IT AGAIN!
### EFFECTIVE JULY 1, 1969

## NINETY DAY NOTICE
## PASSBOOK ACCOUNT

## SIX OR TWELVE MONTHS
## CERTIFICATE ACCOUNT

Now you can pick your own earnings rate when you save at Arkadelphia Federal Savings. Effective July 1, 1969, on all accounts of $500.00 or more you'll earn a big 5% per annum on your savings on our new 90-DAY NOTICE ACCOUNT. This account is similar to all regular pass book accounts except ninety days notice is required for withdrawals on this type of account under Federal Regulations.

A BIG 5¾% interest will be earned by all Arkadelphia Federal Savers on our new Certificate of Deposit Account issued for period of six or twelve months on accounts of $5,000.00 or more. Your funds will be invested for a fixed term and naturally the 5¾% interest on your account is GUARANTEED INTEREST.

○ 4.75% interest paid or compounded semi-annually.

○ No minimum balance required.

○ Any amount may be deposited or withdrawn at any time.

◎ Funds deposited by the 10th of the month earn from the first day of the month.

# ARKADELPHIA FEDERAL SAVINGS

**"WHERE YOU SAVE DOES MAKE A DIFFERENCE"**

went home or in any other case deliver them to Dr. Roebuck. That was the instructions I had."

The circumstances indicating that the writing was only a memo are, we think much stronger. In the first place, it will be noticed that each statement contained in the memorandum addresses itself to a second party, and would appear to be either a direction to her attorney, or a reminder to herself, to make certain changes at some time in the future. The notations for change are themselves somewhat confusing. For instance, she had written "(third) change this in my will", but the change to be made is not mentioned. Item "Third" in the typewritten will bequeaths and demises all of her personal property, including all home furnishings, to her executor, and directs that he dispose of same with the proceeds to be used "as hereinafter directed". The items from "Fourth" through "Tenth" include specific devises and bequests (with the exception of item "Eighth" which names Dr. Roebuck executor and sets his fee). Item "Eleventh" is the residuary clause and leaves the balance and residue of her property to the First Baptist Church of Arkadelphis. As stated, there is not the slightest indication of what change is to be made under item "Third", and other changes desired as expressed in the writing are not dependent, in any manner, upon the change of the third item.

Miss Pullen has then written "(ninth) Change Beverly Tatman to one hundred dolars". This notation is not at all understandable, since item "Ninth" of the typewritten will leaves Beverly Tatman one hundred dollars. It will be observed that Miss Pullen had written "change bal. & residue of my estate I give to the discretion of the exector to use at his discression in any way he wishes"; this however was scratched out, which is even more of an indication that the writing is nothing more than a memorandum, and was never intended to be given testamentary status. Here, there is also an additional circumstance which indicates that Miss Pullen had no firm or fixed intention but was merely expressing thoughts that should be given consideration, for directly

beneath the scratched out disposition of the residue she wrote, "Residue of my estate goes to Chris Pullen and Bruce Pullen [grand nephews] except what should be used for debts or settling of estate". It will be immediately observed that these dispositions are very much in conflict, and it seems unlikely that a person preparing an instrument as important as a will, would actually start writing the instrument until he or she definitely knew to whom he intended to leave the property.

Her intent becomes even more confusing when we examine the typewritten will, for on *some* of the items mentioned, she has, with pen, endeavored to change the typewritten will to comply with the notations on the memorandum—but on other items she has not made the changes set out in the memorandum. What we are pointing out is simply that it is not even clear what she intended to do, even if the instrument could qualify as a codicil.

There are two other circumstances, the first of which is rather potent, that clearly indicate the writing to be only a memo. J. E. Still, who apparently had been the attorney for Miss Pullen for some period of time, testified that he had drawn several wills for her at different times, and that on such occasions, she would bring with her notations written in her own handwriting relative to what she desired to do. The other circumstance is that the so called codicil is written on the back of an advertisement of the Arkansas Federal Savings of Arkadelphia. While we recognize that a perfectly valid will, or codicil, *could* have been written on this paper, it would seem, if it were her desire that the writing be treated with the dignity of a formal instrument, that she would have requested a nurse or other hospital aide to give her some paper.

It is apparent, from what has been said, that we do not consider this writing to be a testamentary disposition. The chancellor, in his opinion, said that he was inclined to the view that the instrument was testamentary in character, though he denied probate on the basis that it was not a valid codicil. We do agree with him that

this "instrument" cannot stand alone as a will. Be that as it may, we have held that if the chancellor is right in the result reached, he will be affirmed, even though our reason for reaching the conclusion differs from the reason given by the trial court. In *Morgan* v. *Downs*, 245 Ark. 328, 432 S. W. 2d 454, we said:

"It is our rule, however, that on trial *de novo* a chancery decree will be affirmed if it appears to be correct upon the record as a whole, even though the chancellor may have given the wrong reason for his conclusion."

Since we hold the view that the writing was no more than a memorandum, and is thus not entitled to probate, there is no need to discuss other questions such as whether a valid executed statutory will can be changed by a holographic codicil, or whether the "instrument" could be incorporated into the February will by reference, and still further alternatively, could the will be incorporated by reference into the "instrument"? A discussion of these points would be *dicta*. Under our finding, the writing in question was not a codicil, but a memorandum.

Affirmed.

BROWN, FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. I think that the majority has treated this case as if a construction of the purported codicil, or of the will as modified by the codicil, were the question before the court, in spite of the accurate statement of the question in the first sentence of the majority opinion and recital of authorities prescribing the intention necessary.

Circumstances emphasized in the majority opinion are:

1. The strongest circumstance to indicate that the writing was intended as a codicil is the delivery of an envelope containing the will and the later writing

to the administrative clerk at the hospital to be delivered to Dr. Roebuck, the executor nominated in the earlier instrument, if the testatrix did not return home from the hospital.

2. Each statement appears to be directed to a scrivener as directions, or to herself as a reminder.

3. Some of the items in the later instrument are not complete in themselves

4. No change would actually result from one item listed in the later writing.

5. The testatrix changed one item in the later writing by scratching it out.

6. Writing a direction in lieu of the item scratched out and in conflict therewith indicates that the testatrix had no fixed or firm intention.

7. The testatrix had, on previous occasions, taken notations written in her own handwriting to her attorney relative to previous changes in other wills.

8. The purported codicil is written on the back of an advertisement.

I do not see how these facts considered separately or collectively indicate a lack of testamentary intent. On the other hand, some of them are, to me, indicative of a testamentary intent.

The first circumstance is correctly labeled a strong one. If the instrument had been intended as a memorandum of instructions to her attorney, rather than a statement of testamentary intention, it seems obvious that it would have been directed or delivered to Miss Pullen's attorney to whom she had previously taken handwritten notations of desired will changes rather than to the person she was making custodian of her will. It must be remembered that the two instruments were

placed in the hands of the custodian in an envelope labeled (apparently by Miss Pullen) "Last will and testament of Virgie Pullen, to be delivered to Dr. Tommy Roebuck in case of death." This is very significant. See *Bradshaw* v. *Pennington,* 225 Ark. 410, 283 S. W. 2d 351. But there are other important circumstances.

The so-called directions or reminders are actually inexpertly couched in language used by a skilled scrivener in drafting a codicil wherein changes are often indicated by language reciting that a certain item "be changed to read as follows" or by similar language. The words "I desire to change the will in regard to J. W. Langfitt, * * *" has been held to be sufficient, when read with the testator's will, to effect a change rather than to express a mere desire to do so. *Harrison* v. *Langfitt,* 158 Iowa 479, 139 N. W. 1076 (1913). See 2 Page on Wills 430, § 21.47. The words "I wish to give" in a codicil have also been held to be equivalent to the declaratory expressions "I change" and "I give." *Roberts* v. *Wright,* 48 R. I. 139, 136 A. 486 (1927).

While item third only reads "change this in my will," the change seems obvious to me. This item bequeathing personal property to her executor to be disposed of by him and applied to specific legacies is completely replaced by the changed disposition of her residuary estate which would have gone to Chris and Bruce Pullen. The intention to revoke a paragraph of a will by codicil need not be stated expressly. It may be manifested from the language used in the codicil. The extent of the revocation is determined by the extent to which the codicil is inconsistent with the will. *Driver* v. *Driver,* 187 Ark. 875, 63 S. W. 2d 274. No more effective change could have been wrought.

The fact that item ninth would result in no actual change is as inconsistent with a list of directions or a reminder as it is with a codicil. If this item stood alone, the instrument would be meaningless. It only indicates to me a strong desire that this person be remembered in Virgie Pullen's will.

The writing is dated. The date it bears (June 26, 1969) indicates that it was written during an earlier confinement in the hospital. After that date, the record indicates, she was out of the hospital, and at her home until November 1969, when she delivered the envelope to the hospital clerk. In the interim, if the writing had been intended only as directions to a scrivener or reminder to herself, Miss Pullen would have contacted her attorney, or delivered the memorandum to him. Miss Pullen was able to be up and around in her house and to go out into her yard. Her attorney's secretary (who was an attesting witness to the execution of her will) ran errands for her and occasionally took her for drives into the country during this period.

The writing bears the signature of the testatrix. I cannot conceive of any reason why one would place his signature on a reminder to himself. While one might sign directions to his attorney, the signature seems much more consistent with testamentary intention than with directions to another. There is no indication that Virgie Pullen had signed her name to previous notations of desired will changes.

Of course, a codicil is seldom complete in and of itself. Its meaning and construction are to be determined by construing it and the original will together as if they were one document executed at the time of executing the codicil. *United States* v. *Moore,* 197 Ark. 664, 124 S. W. 2d 807; *Driver* v. *Driver,* supra.

Language used in *Kinnear* v. *Langley,* 209 Ark. 878, 192 S. W. 2d 978, is particularly appropriate here. We said:

A codicil is not an entirely new will. A codicil is, rather, a postscript to the will showing something added by the testator to the original document. Just as a postscript to a letter may show a new idea of the writer or a change, or amendment to a thought, expressed in the letter; so a codicil may express a new bequest or a change or modification of a be-

quest in the will. Just as the postscript does not physically or literally erase or expunge whatever it affects in the letter; so, also, the codicil does not physically or literally erase or obliterate whatever it affects or changes in the original will. The will is probated along with the codicil; together they constitute the "last will and testament" of the testator or testatrix.

I am simply unable to follow the reasoning by which a lack of testamentary intention can be said to be indicated through eradication of a clause by scratching it out and immediately following the eliminated clause with a substitute, complete in itself, covering the same subject matter. The situation seems no different to me than one where the eliminated clause was erased from the paper. An erasure of a clause by a testatrix does not affect the validity of a will. *Musgrove* v. *Holt*, 153 Ark. 355, 240 S. W. 1068.

I cannot attach any significance to the paper on which the alleged codicil was written. We have sustained a grossly informal document left by a testatrix with her kinsman and attorney as the instrument by which she intended to make testamentary disposition of her property as one showing testamentary intention, rather than mere deliberative memoranda. Certain parts were written in pencil and others in ink. Pencil marks had been run through one clause. There were long blank spaces between paragraphs and sentences, and between the last writing and the signature. *Musgrove* v. *Holt*, supra. There we quoted appropriate words from Jarman on Wills, as follows:

The law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and if this appear to be the nature of its

contents, any contrary title or designation which he may have given to it will be disregarded.

We have held a very informal letter from a decedent to his wife to be testamentary in character. *Arendt* v. *Arendt,* 80 Ark. 204, 96 S. W. 982. See also, *Murphy* v. *Murphy,* 144 Ark. 429, 222 S. W. 721.

We have also approved an instrument written on the back of a blank check as a valid holographic will in *Chambers* v. *Younes,* 240 Ark. 428, 399 S. W. 2d 655. In that case, we quoted the following pertinent language from C. J. S.:

> No particular words are necessary to manifest the animo testandi; thus, the paper need not refer to itself as a will. * * * The fact that the holographic instrument concerns itself with matters other than the disposition of property will not nullify its effect as a will, but it may be considered in determining the intent of the writer [*Cartwright* v. *Cartwright,* 158 Ark. 278, 250 S. W. 11]. Inquiry may be made into all relevant circumstances where the existence of testamentary intent is in doubt.

Insofar as informality in form and language is concerned, the document before us shows a testamentary intention at least as clearly as did the will we found valid in *Hanel* v. *Springle,* 237 Ark. 356, 372 S. W. 2d 822.

I think that another significant factor is the title placed on the later expression of Miss Pullen's desires. She labeled it "Change of Will." No better lay designation of a codicil could have been given. A codicil is an instrument made subsequently to a will modifying or changing it in some respect. Black's Law Dictionary, 4th Ed.; Webster's New International Dictionary, 2nd Ed. and 3rd Ed. It is a testamentary disposition subsequent to a will which alters, explains, adds to, subtracts from, confirms or revokes the will by republication. *Stivers* v. *Mitchell,* 314 S. W. 2d 569 (Ky. Ct. App. 1958). See 57 Am. Jur. 415, 416, Wills, §§ 605, 607.

Some of the findings in the trial court's memorandum opinion are significant, to wit:

It appears as notes to someone to prepare changes for her, but still the circumstances indicate that it was in the form she wanted it if she didn't leave the hospital alive. However, the testimony this morning given, it indicates that she wrote it at least three months before she entered the hospital this last time. And the other testimony indicates that she was often driven around by Dr. Roebuck and he was always available to her to take her any place that she wanted to go, and she was able to make some trips to tend to business in this period of time.

\* \* \*

Did Miss Pullen on June 26, 1969, debate as far as the evidence reflects that she wrote exhibit 1, an intention to make changes in her will, exhibit 2. My answer to that is "Yes." Is exhibit 1 the instrument testamentary in character? I'm inclined to say that it is.

\* \* \*

Now is this instrument just notes to a scrivener? From all the evidence in the case she wrote it out in June, 1969, it certainly looks like it was just notes for some lawyer to take her old will and redo it or prepare a codicil for it. As I understand the testimony, her general practice has been to just have another one written. She has had a number written in the past. A woman has a right to change her mind, but when she changes her mind about these matters that affect dying she had better get it pretty solid. In view of Mr. Fisher's testimony this morning and the other testimony that we have in the case, my answer to that by the greater weight of the evidence must be "No." Is the form of the instrument real important? Well the *Vaught* case, 247 Ark. 52, and the old case of *Arendt* v. *Arendt*, 80 Ark. 204, would indicate that

form in addition to other citations I've read is not too important, but what we want to get to is the intention. Now I've come to the conclusion that this instrument, exhibit 1, must be a holographic codicil if it can be admitted as a part of this lady's will. It's in her handwriting, it indicates what she wanted to do. Does it add to or clarify—does it add to the confusion or does it clarify what she really intended? There is no confusion in exhibit 2, and with minor exceptions it doesn't add particularly to any confusion that might arise if it was made a part of this will. Then I come down to this, because I can't get away from it. I think she intended for this to be a part of her will, but she has failed to comply with the statutory formality. I just don't believe our law will go that far to just have an informal instrument that cannot stand alone, written at a different time under different circumstances alter or change a will, and therefore this Court must hold and does hold that this instrument not be admitted to probate.

Other significant statements are contained in the probate court's judgment, such as:

### III.

It is found that the paper, Exhibit 1, is not a new will and that it does not revoke the statutory will, "Exhibit 2".

### IV.

It is the opinion of the Court that Exhibit 1 reflects an intention to make changes in the will Exhibit 2.

### V.

Exhibit 1 having been signed above the provisions of any proposed changes to the will is in the opinion of this Court testamentary in character.

## VIII.

It is also the opinion of this Court that the instrument Exhibit 1 is not merely notes to a scrivener.

## IX.

Although this Court is of the opinion that the form of the instrument is not of real importance, but that the Exhibit 1 indicates the intention of the decedent as to what she wanted to do and that she intended for this Exhibit 1 to be a part of her will, but that it fails to comply with statutory formality.

I respectfully submit that the able probate judge was in error in his final conclusion, but I do not see how this court can, on trial de novo, say that his findings of fact are clearly against the preponderance of the evidence, as apparently the majority does.

The error of the probate judge lies in his denial of probate to the codicil because of its failure to comply with statutory formality.

Our authorities make it quite clear that a codicil need not stand alone, and certainly it would be unusual if it were not written at a different time and under different circumstances than the original will. A codicil is a republication of a will, and the whole is to be construed together as if it were one instrument executed on the date of the codicil with the latter yielding to the former only where they are in conflict. *Rogers* v. *Agricola,* 176 Ark. 287, 3 S. W. 2d 26; *United States* v. *Moore,* 197 Ark. 664, 124 S. W. 2d 807; *Garnett* v. *Clayton,* 222 Ark. 324, 260 S. W. 2d 441; *City of Little Rock* v. *Lenon,* 186 Ark. 460, 54 S. W. 2d 287. The language of a codicil is to be harmonized with the will where there is no repugnancy. *State* v. *Gaughan,* 124 Ark. 548, 187 S. W. 918. A testator's will may consist of several different testamentary papers of different dates. The aggregate or net result of the several writings is the expression of his testamentary wishes. His intention is to be ascertained by considering the

language of the documents which, taken together, constitute the will. *Bradshaw* v. *Pennington*, 225 Ark. 410, 283 S. W. 2d 351.

I do not know of any statutory formality required of a holographic codicil other than the necessity that both the body of the instrument and the signature be in the proper handwriting of the testator, as is required for a will. Ark. Stat. Ann. § 60-404 (Supp. 1969). For the purposes of the probate code, the word "will" in the act includes codicil. Ark. Stat. Ann. § 62-2003 (Supp. 1969).

I agree with the probate judge and the appellant that a formally authenticated will may be changed by a holographic codicil. Our previous holdings to the contrary were based entirely upon the then existing statutory prohibition (Ark. Stat. Ann. § 60-104) against pleading a holographic will in bar of a will subscribed in statutory form. *Parker* v. *Hill*, 85 Ark. 363, 108 S. W. 208. This prohibition was eliminated when the probate code was adopted. See notes to Ark. Stat. Ann. §§ 60-101—127 (Supp. 1969); *Smith* v. *Nelson*, 227 Ark. 512, 299 S. W. 2d 645.

I would reverse the probate court, actually on the basis of agreement with that court's findings, but disagreement with its action, and remand with directions to admit the handwritten document to probate as a codicil to Virgie Pullen's original will.

I am authorized to state that BROWN, J., joins in this dissent.