## IN THE MATTER OF THE ESTATE OF Harold B. O'DONNELL, Deceased

90-257                       803 S.W.2d 530

Supreme Court of Arkansas
Opinion delivered February 4, 1991
[Rehearing denied March 4, 1991.]

*Donald A. Forrest*, for appellant William O'Donnell, Executor.

*Marc I. Baretz*, for appellants Lillian and Victor O'Donnell.

*Rieves & Mayton*, by: *Elton A. Rieves III*, for appellee Patricia A. O'Donnell.

DONALD L. CORBIN, Justice. This appeal comes from an order of the Probate Court of Crittenden County, denying probate of two documents, granting dower, and distributing the estate. Appellant, William L. O'Donnell, brother of decedent Harold O'Donnell and executor of the estate, filed a petition for probate of two documents, the first document being a holographic instrument dated May 23, 1988, and the second document being a typewritten instrument dated October 9, 1979. Appellee, Patricia O'Donnell, widow of the decedent, contested the admission of both documents to probate.

Appellants, William O'Donnell, Victor O'Donnell, decedent's brothers, and Lillian O'Donnell, decedent's mother, assert four arguments for reversal of the probate court's order. We find no merit in the first two arguments; however, the third argument has merit and we reverse the order as it relates to that point. Our reversal of the order on the third point necessarily requires reversal of the order on the fourth point.

I.

TESTIMONY OF SETTLEMENT NEGOTIATIONS

As their first argument, appellants contend that all of the testimony involving references to a "shopping list" or "family settlement" should have been excluded under Ark. R. Evid. 408 as evidence of an attempt to negotiate a family settlement agreement.

Tom Montgomery, attorney for decedent, testified on behalf of appellants. His testimony was the primary evidence offered in support of the holographic instrument. On cross-examination he denied referring to this instrument as the decedent's "list" or "shopping list" from which he was to prepare the decedent's will. David Shelton, appellee's former attorney, testified on her behalf that Montgomery did in fact refer to the holographic instrument as a "list" or "shopping list." Shelton further testified that because he "didn't have a vague idea" as to the value of the estate at the time the references to a "shopping list" were made, he was

in no position to make any settlement offer on behalf of appellee.

■ The probate court allowed Shelton's testimony, as well as that of appellee and one other witness, to be admitted for the purpose of impeaching Montgomery's testimony. Rule 408 of the Arkansas Rules of Evidence clearly permits appellee to directly attack the credibility of Tom Montgomery. The last sentence of Rule 408 provides: .

> This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, . . . .

See Missouri Pac. R.R. Co. v. Arkansas Sheriff's Boys' Ranch, 280 Ark. 53, 655 S.W.2d 389 (1983).

■ We note further Shelton's testimony that he was ignorant of the estate's value and therefore in no position to make any settlement offer. The probate judge could have properly considered this testimony as credible evidence that no settlement negotiations were in fact conducted. Under these circumstances, Ark. R. Evid. 408 would not prevent admission of the challenged testimony.

■ The trial judge has discretion in deciding evidentiary issues and his decision will not be reversed on appeal unless he has abused his discretion. Northwestern Nat'l Life Ins. Co.. v. Heslip, 302 Ark. 310, 790 S.W.2d 152 (1990). We find no abuse of discretion and affirm the trial court's admission of this evidence.

## II.

## HOLOGRAPHIC INSTRUMENT

Appellants allege the court erred in denying the holographic instrument of May 23, 1988, to probate. For the benefit of the reader, a copy of the holographic instrument is reprinted and attached as an appendix to this opinion. The probate court denied its admission to probate for failure to prove testamentary intent. The court arrived at this decision after carefully comparing factors indicating the holographic instrument was a will with factors indicating it was not a will. The probate court's memorandum opinion listed the factors as follows:

*Factors Favoring Holographic Instrument as Will*

1) Montgomery told decedent what to do, and he hands it to Montgomery saying, "Here it is."

2) Decedent's habit as acting in cursory and abbreviated way.

3) Instrument dated and signed.

4) Instrument has "Last Will and Testament".

5) Decedent never told wife he had a 1979 will.

6) Decedent never told wife he revoked 1979 will.

7) Decedent never told wife home just in his name.

*Factors Indicating Holographic Instrument Not a Will*

1) So brief, perfunctory, truncated and cursory as to be meaningless.

2) Written part in pen, part in pencil — seems to be on scratch paper.

3) Strikeovers.

4) No real urgency or hurry in getting a will — not sick.

5) All property not disposed of.

6) Shelton said Montgomery called it a list, until some 10 days later.

7) Decedent knew Montgomery going to make a written will.

8) Decedent showed typewritten will to his wife, but did not tell her he had a handwritten will.

9) Discussed with wife in detail the provisions of typewritten will.

10) Has no words of a dispositive nature.

11) Wife's name not mentioned.

The probate court's memorandum opinion went on to say:

As the Court appreciates the law in this area, the Court must be satisfied that the writer clearly expressed an intent to make the proffered document his will, and no inference is permitted, and the Court's mind must be settled as to the writer's testamentary intent. *McDonald* v. *Petty*, 254 Ark. 705, 496 S.W.2d 365 (1973). The document itself, along with all the attending circumstances, must overcome all doubt about testamentary intent. *David Terrell Faith Prophet Ministries* v. *Estate of Varnum*, 284 Ark. 108, 681 S.W.2d 310 (1984).

The proof shows that decedent called Montgomery to prepare a will, and Montgomery instructed decedent how to prepare a holographic will, "to tide him over." When decedent comes to Montgomery's office later, he handed Montgomery the holographic instrument, and said, "Here it is." Montgomery talked with decedent about the contents to be in his will, and then prepared a typewritten will, which was never properly executed. The decedent died unexpectedly a few days later.

It is clear Montgomery was in the process of preparing an attested typewritten will, and although Montgomery instructed him how to make a holographic will, the words, "Here it is," might have meant here is the way I want my will drawn up. He might have decided to simply let Montgomery go on with the typewritten will, since there was no apparent urgency.

It is certain that Montgomery thought that decedent intended the document to be his will; but it is the decedent's intent that is the subject of the inquiry, not his lawyer's, and from all the surrounding circumstances, together with the reading of the four corners of the instrument, the Court cannot, with confidence, say the decedent intended this document as a will.

The court feels this case is somewhat similar to *Pullen* v. *Estate of Pullen*, 249 Ark. 489, 460 S.W.2d 753 (1970). There, as here, the proof indicated that the holographic document might as well been a memorandum to the lawyer, as an intended will.

■■ We review probate matters *de novo* on appeal but will not reverse the findings of the probate judge unless clearly erroneous. *Mangum* v. *Estate of Fuller*, 303 Ark. 411, 797 S.W.2d 452 (1990). We agree with the reasoning of the probate judge who had the facts before him. His reasoning is within the framework of the applicable law which is cited in the memorandum opinion. We cannot say the probate judge was clearly erroneous in denying the holographic instrument's admission to probate for lack of testamentary intent.

## III.

## REVOCATION OF 1979 WILL

Appellants allege the probate court erred in holding the typewritten will dated October 9, 1979, to be revoked. They argue that the revocation statute was not strictly complied with as the will was not destroyed in the testator's presence. The evidence at trial revealed that Montgomery tore the 1979 will into two pieces pursuant to the decedent's directions which came over the telephone. Montgomery testified that he could not say for certain that the decedent was or was not present when he destroyed the will. However, Montgomery stated that, according to the notes he made to himself, the will was most likely destroyed outside the testator's presence.

Ark. Code Ann. § 28-25-109 (1987) provides in part that:

(a) A will or any part thereof is revoked:

. . . .

(2) By being burned, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction.

A decision under a prior statute which is substantially similar to the current statute, *Reiter* v. *Carroll*, 210 Ark. 841, 198 S.W.2d 163 (1946), held that oral instructions of the testator that his will be destroyed were insufficient, even though the testator believed his instructions had been carried out. The decision required strict compliance by stating "the testator did not personally destroy the will, and never caused the will to be

brought into his presence for destruction. So, the will was not revoked in the form and manner required by law." *Reiter*, 210 Ark. at 844, 198 S.W.2d at 165.

We followed the strict compliance standard of the *Reiter* opinion in *Mosely* v. *Mosely*, 217 Ark. 536, 231 S.W.2d 99 (1950), a case decided under yet another version of the same statute although substantially similar to the current statute in all respects relevant to this case. The *Mosely* court stated:

> In construing this statute we have uniformly held that the only methods of revoking a will are those enumerated in the statute. For instance, a testator's direction that his son destroy a will was held ineffective where the testator did not specify, as the statute requires, that the destruction be in his presence. *Reiter* v. *Carroll*, 210 Ark. 841, 198 S.W.2d 163.

*Mosely*, 217 Ark. at 537, 231 S.W.2d at 100. *Mosely* relied on *Reiter* and refused to recognize the doctrine of implied revocation as it relates to the particular facts of the *Mosely* case.

Appellee urges us to adopt a theory of substantial compliance with respect to the revocation statute. In support of this argument appellee cites us to cases in which we have allowed substantial compliance with other probate statutes. *See, e.g., Faith* v. *Singleton*, 286 Ark. 403, 692 S.W.2d 239 (1985); *Hanel* v. *Springle*, 237 Ark. 356, 372 S.W.2d 822 (1963). The probate judge applied a theory of "ratification" to this case by stating that the testator "ratified" the revocation of the 1979 will when he observed that the will had indeed been destroyed. Although he wrote a well-reasoned memorandum opinion on this issue, the probate judge, like appellee, did not cite any binding authority in support of either ratification or substantial compliance with respect to the revocation statute.

■ The strict compliance standard was enunciated in *Reiter, supra,* and followed in *Mosely, supra.* We are bound by those decisions. Accordingly, we hold that the testator's 1979 will was not revoked pursuant to the terms of the revocation statute, section 28-25-109, as the will was not destroyed in the testator's presence. We reverse and remand the case to the probate court with instructions that the October 9, 1979 will be admitted to

probate.

## IV.

## DISTRIBUTION OF THE ESTATE

Appellants contend the probate court erred in its order of distribution. Appellants specifically challenge the award of debt-free dower. Because we reverse this case for admission of the 1979 will to probate, we must necessarily reverse the court's order of distribution as well.

Affirmed in part; reversed and remanded in part.

468

P-88-161                                      /

Chris    10,000   25000              23 may 88
Cindy    10,000    "
Nick     10,000    "
Store    Inv. + Rec. + property — Billy Joe
Blue Lake.  Proctor Property (acreage)  mother
Fairfield  + Clinton
House + 10 acres        $50,000.

Billy Joe

                              Last Will +
                              Test.

FILED AT
12.08 O'CLOCK A.M
OCT 05
SALLYE B. Miner, Clerk